(No. 13970.—Decree affirmed.)

C. E. JOHNSON, Appellant, *vs.* BERT MILLER *et al.* Appellees.

*Opinion filed October 22, 1921.*

1. DEEDS—*when, only, will equity set aside conveyance for fraud and misrepresentations.* It is only in cases where the parties have not equal knowledge or means of knowledge as to the value of property involved in an exchange of real estate that equity will afford relief on the ground of fraud and misrepresentations, and where no deceit has been practiced which ordinary prudence could not detect the law will not assist a man capable of taking care of his own interests because he makes a bad or losing bargain.

2. SAME—*when inadequacy of price will not afford relief.* Cases in which gross inadequacy of price has been held to justify equitable interference with a conveyance of real property are not applicable in a suit to set aside an exchange of properties where the complainant fails to prove his allegations of fraud and deceit and where he had an opportunity to and did inspect the land concerning the value of which he alleges he was misinformed.

3. CONTRACTS—*exaggerated representations are not, ordinarily, ground for setting aside contract.* Representations as to the value of property, though exaggerated, are not ordinarily ground for setting aside a contract, and are never made the basis for relief where the party claiming to have been deceived had ample opportunity to know of the truth or falsity of the representations.

APPEAL from the Circuit Court of DeKalb county; the Hon. C. F. IRWIN, Judge, presiding.

FAISSLER, FULTON & ROBERTS, and JOSEPH O. McKIERNAN, for appellant.

J. E. MATTESON, (MARY HAMSMITH, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, C. E. Johnson, filed his bill in chancery in the circuit court of DeKalb county to rescind and set aside an exchange of real estate made between himself and appellee Bert Miller. At the time of the transaction Johnson

resided in the city of DeKalb and Miller resided on a farm in DeKalb county. Johnson owned a residence and business property in the city of DeKalb and conducted a boot and shoe store in the business property. Miller owned 200 acres of farm land in Adams county, Wisconsin. September 30, 1914, the parties entered into a contract by which Johnson agreed to convey his two properties and shoe business to Miller subject to a $2800 mortgage on the store property and a $400 mortgage on the residence. Miller agreed to convey his Wisconsin farm of 200 acres to Johnson subject to mortgages aggregating $5000 and unpaid drainage assessments; also to transfer to Johnson his (Miller's) interest in the personal property on the farm and to pay Johnson in cash or note $2000. Conveyances were exchanged between the parties December 15, 1914, and Miller gave Johnson his note for $2000, due January 15, 1915, and a bill of sale of the personal property on the Wisconsin farm. Possession of the stock of shoes was delivered to Miller on the same day. Johnson was to get possession of the Wisconsin farm March 1, 1915. The original bill was filed by Johnson on May 27, 1915, and an amended and supplemental bill was filed by him January 16, 1916. The cause was tried on the issues made by the amended and supplemental bill and answer thereto. The cause was referred to a special master in chancery to take the proofs and report his conclusions. The master reported that Johnson was not entitled to have the exchange of properties annulled and the deeds set aside, and after overruling exceptions of Johnson to the master's report the chancellor so decreed, and this appeal is prosecuted from the decree.

The bill charges appellees Bert Miller and O. L. Senneff, a real estate agent who was on very intimate terms of friendship with appellant, entered into a conspiracy to take advantage of the confidence reposed in Senneff by appellant and secure his property; that in furtherance of the con-

spiracy Senneff suggested from time to time that appellant exchange his property for farm property, and finally told him he had secured a man who owned a 200-acre farm in Wisconsin and would trade it for appellant's property; that Senneff introduced Miller to appellant, and they represented to him that the Wisconsin farm was of the market value of $90 per acre and proposed an exchange of it for appellant's DeKalb property, each subject to the encumbrances. They also proposed to transfer the personal property on the Wisconsin farm to appellant. It consisted of stock, tools and crops and was represented to be of the value of $1000, and in addition Miller was to give appellant his note for $2000, due in thirty days. The bill alleges that relying on the advice and counsel of Senneff and his and Miller's representations he made the contract for the exchange of properties and performed his part of the agreement; that he learned, after doing so, the Wisconsin farm was not worth to exceed $15 per acre, and that the representations of Senneff and Miller that it was worth $90 per acre were false and fraudulent and were known by them to be false and fraudulent; that they were made to deceive appellant; that they did deceive him and induced him to make the exchange. The bill also alleges Miller did not deliver the personal property on the farm to appellant but removed it beyond his control and did not pay his $2000 note when it became due; that Miller had transferred the DeKalb property to Nelien Miller, but the conveyance was only colorable and was made in pursuance of the scheme to defraud and cheat appellant, and Miller had also disposed of the stock of shoes. The bill alleges appellant was wholly without knowledge of the value of the Wisconsin land but relied on Senneff, who he has since learned was acting in conjunction with Miller to cheat and defraud appellant out of his property. Necessary parties were made defendants to the bill, which prayed that an account be taken; that appellant be decreed what, if anything, appeared to be due

him, he offering to pay anything found due from him; that the deeds be set aside and for general relief.

The decree found that Miller and Senneff did not enter into a conspiracy to defraud appellant and did not make false representations as to any material fact pertaining to the exchange of properties; that in September, 1914, appellant, with a friend of his who was intending to farm the Wisconsin land with appellant, accompanied by Senneff, visited the Wisconsin farm and examined it and after their return entered into the contract for the exchange; that Miller did not remove the personal property on the Wisconsin farm beyond appellant's control; that the $2000 note given appellant by Miller was not paid at maturity and appellant took judgment by confession on the note; that the equities of the case were with Miller so far as setting aside the conveyances for the respective properties is concerned; that appellant was not entitled to an accounting for the sale of the stock of boots and shoes which Miller had sold. The decree finds a balance due on the $2000 note of $1317.36, with interest at five per cent per annum from January 15, 1915, amounting to $1360.29, and orders the same paid, with interest from February 8, 1915, together with costs amounting to $6.45, and that execution issue therefor. The decree was in accordance with the report and recommendations of the master in chancery and the account as stated by him.

Appellant contends that the property he exchanged for the Wisconsin farm was worth $12,500 above the encumbrances on it and the farm had no net value above the encumbrances, and that the inadequacy of the consideration received for his property was so gross as in itself to amount to proof of fraud. Appellant did not testify that appellee Miller ever made any statement or representation to him as to the value of the Wisconsin land. The principal ground for relief relied on is the claim that the Wisconsin farm was worth nothing above encumbrances; that appellant's De-

Kalb property was worth $12,500 above encumbrances; that the gross inadequacy of the consideration paid appellant for his property amounted to fraud, which, coupled with the other facts and circumstances, justified the relief prayed. If it be conceded that appellant received much less than the property was worth, the facts proven in this case afford no basis for the relief prayed. The proof does not support appellant's claim that Miller and Senneff conspired to defraud him in the transaction. Appellant applied to Senneff to secure for him a trade of his DeKalb property for farm property. Some months later Senneff introduced Miller to him, who owned the Wisconsin farm, and the trade was subsequently consummated. We find no warrant in the proof for the assertion that Senneff represented Miller in the negotiations. Miller never made any representations as to the valuation of the Wisconsin farm, and the only representation made by Senneff was while he and appellant were on the Wisconsin farm for the purpose of inspecting it. Senneff said to appellant, Miller not being present, that Miller did not know what a good piece of land he owned; that it would soon be worth $100 per acre. Appellant had gone to view the land, refusing to buy without having seen it and relying on no one's representations as to what it was worth. The farm consisted of 200 acres and was encumbered for $5500. Four witnesses testified for appellant on the question of its value, and their testimony ranged from $10 or $15 per acre to $40 or $50 per acre. Three witnesses testified for appellees on the same subject and placed the value at $45 to $50 per acre. Miller himself testified that he about two years before the trade paid $27.50 per acre for it when it was wild, and he had since improved it for occupation and had part of it in cultivation. Appellant did not depend, as we have said, on representations of Miller but visited and examined the land. Quite a period of time before the deeds were exchanged he had the opportunity to ascertain the character

and value of the land and the truth of any statements or representations on that subject, if any such had been made. It seems clear from the testimony that he was not defrauded or misled by false representations made by anyone as to the value of the land. He had the opportunity by his visit to the farm to ascertain and determine its value, and it was his duty to make use of such opportunity. The law charges him with knowledge he might have obtained by making use of the means afforded him. Where no deceit has been practiced which ordinary prudence could not detect, the law will not assist a man capable of taking care of his own interests because he makes a bad or losing bargain. It is only in cases where the parties have not equal knowledge or means of knowledge as to the value of a property that equity will afford relief on the ground of fraud and misrepresentations. Representations as to value of property, though exaggerated, do not ordinarily afford ground for setting aside a contract, and are never made the basis for relief where the party claiming to have been deceived had ample opportunity to know of the truth or falsity of the representations. If they are made with the intention of procuring them to be acted upon without investigating their correctness, and a party does so rely on them and act, equity may afford relief. These principles are sustained by many decisions. (*Miller* v. *Craig*, 36 Ill. 109; *Tuck* v. *Downing*, 76 id. 71; *Moore* v. *Recek*, 163 id. 17; *Southern Development Co.* v. *Silva*, 125 U. S. 247.) Cases in which gross inadequacy of price have been held to justify equitable interference are not applicable under the facts in this case.

The proof shows that appellant lost the personal property on the Wisconsin farm, which was of the value of $1000, by his own neglect and refusal to take possession of it.

The decree of the circuit court is sustained by the law and the evidence and is affirmed.          *Decree affirmed.*