(No. 37520.—

JOHN C. WILKINSON, JR., Appellee, *vs.* JOHN A. APPLETON
*et al.,* Appellants.

*Opinion filed May 27, 1963.*

JAMES W. COTTER, JOHN E. TOOMEY, and EUGENE M. WIASE, all of Chicago, for appellants.

HENRY W. KENOE and RAPHAEL FINE, both of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, involving a freehold, is brought from a decree of the circuit court of Cook County which determined title to real estate, ordered its conveyance, and further directed a sale of the premises in the event the land could not be partitioned. The decree was entered on the complaint, taken as confessed against defendants after two successive answers had been stricken, and the issue here is whether those answers raised a valid defense to the specific performance and partition counts of the complaint.

Facts disclosed by the pleadings and exhibits thereto show that on September 7, 1958, the principal defendant, John A. Appleton, purchased two apartment house properties in the city of Chicago, which shall be referred to, respectively, as the Pearson Street property and the Everett Avenue property. Plaintiff, John C. Wilkinson, Jr., a real-estate broker and managing agent, acted as defendant's broker and as the procuring party in the transactions. Concurrent with defendant's purchase, title was placed·in a trustee under a land trust of which defendant was the

sole beneficiary. The successor trustee, Harris Trust and Savings Bank, is a nominal party defendant in this proceeding.

On November 12, 1958, plaintiff, as the party of the first part, and the defendant Appleton, as party of the second part, entered into a written contract which, after describing the prior land purchases and stating that plaintiff had waived his usual and customary brokerage fees, set forth in pertinent part the following agreements between the parties:

"Now, Therefore, in consideration of the premises above, and in consideration of the mutual premises and covenants herein contained, it is agreed and contracted between the parties as follows:

1. The party of the first part shall receive a 10% fee interest in each of said properties and shall receive the same rate of income, amortization and depreciation for his 10% share as does the party of the second part for his ninety (90) percent share, provided however, that the party of the second part shall not be obligated to pay any amounts (other than the management fee set forth below) to the party of the first part by reason of this 10% interest unless and until he shall have received the sum of Fifty Thousand ($50,000.00) Dollars net income in any one year for his interest in said buildings, which sum should be clear to the party of the second part after management expense, operating expense, mortgage payments, real estate taxes and any and all other customary operating charges in connection with each of said properties.

\* \* \*

"6. In the event of the sale of either or both buildings then the party of the first part is to receive 10% of the net proceeds of said sale or sales after such usual and customary costs of selling and prorations of the sale and mortgage have been deducted.

\* \* \*

"7. The 10% ownership interest of the party of the first part shall be assignable by the party of the first part to his heirs only and this 10% ownership agreement shall be binding upon the party of the second part, his heirs, and assigns."

Other provisions of the agreement not involved here gave plaintiff a contract to manage the properties for a period of five years.

At some later date which does not precisely appear, de-

fendant sold the Pearson Street property and, pursuant to the contract, paid plaintiff 10% of the net proceeds of the sale. Following this a disagreement arose on May 24, 1960, when defendant allegedly sought to cancel the management provisions of the contract, and on November 29, 1960, plaintiff initiated this action. Count I of the complaint alleged that defendant has refused to perform the agreement by conveying to plaintiff a 10% fee interest in the Everett Avenue property, and prayed that he be directed to specifically perform the contract. Count II prayed for partition.

Defendant filed two successive answers, both of which were stricken on motion of plaintiff that they were "frivolous, a sham and failed to state a defense." Briefly, the main defenses alleged which have been pursued by defendant's contentions in this court were: (1) that the contract or agreement sued upon is unenforceable because it was induced by misrepresentation on the part of a fiduciary; and (2) that the contract contemplated only that plaintiff would have a 10% beneficial interest in the trust, or personal property, rather than a fee interest. Defendant's initial contention here is that the allegations of misrepresentation and breach of a fiduciary relationship entitled him to be heard on the merits of such issues.

Broadly speaking, for a misrepresentation to constitute fraud which invalidates a contract, it must be a representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and known by the party making it to be false, or not actually believed by him, on reasonable grounds, to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement. (See: *Roda* v. *Berko*, 401 Ill. 335; *Handelman* v. *Arquilla*, 407 Ill. 552; *Wisherd* v. *Bollinger*, 293 Ill. 357; *Krankowski* v. *Knapp*, 268 Ill. 183.) It is

well settled, too, that a contract procured by misrepresentation or concealment is especially vulnerable to attack where the party accused of fraud has a confidential relationship toward the injured party. At the same time, however, the mere existence of a fiduciary relationship does not invalidate the parties' contracts, which are generally as valid as contracts between other persons if open, fair and deliberately made. *Works* v. *McNeil,* 1 Ill.2d 47; *Schueler* v. *Blomstrand,* 394 Ill. 600.

As a defense to the complaint, and to avoid the contract sued upon, defendant alleged that a fiduciary relationship of real-estate broker and client existed between plaintiff and himself; that plaintiff represented him in the transaction and that he relied upon the integrity and fair dealing of plaintiff; that plaintiff grossly misrepresented the income and operating expenses of the real estate being purchased; that plaintiff represented and guaranteed that the two apartment buildings would result in a net to defendant of at least $50,000 a year; and that he, defendant, through the trust and confidence reposed in plaintiff, accepted the latter's assurances and representations in such regard. Continuing, it was alleged that the buildings did not produce the income represented, but in fact resulted in a deficit, making it necessary for defendant to sell one of the buildings to protect his investment.

While perhaps not very artistic, it is our opinion that the total allegations are sufficient to allege the existence of a fiduciary or confidential relationship, (*Moehling* v. *O'Neil Construction Co.* 20 Ill.2d 255,) and a breach of that relationship by the misrepresentation of a material fact, relied upon by defendant to his detriment. (Cf. *Peters* v. *Catt,* 15 Ill.2d 255, 263.) Ordinarily erroneous statements as to matters of opinion, such as representations of the value of property, do not amount to fraud avoiding a contract made in reliance thereon. (*Johnson* v. *Miller,* 299 Ill. 276.) However, where the misrepresentation re-

lates to some specific extrinsic fact materially affecting value, and where the fact is one peculiarly within the knowledge of the speaker, and the statement is made with knowledge of its falsity, or what the law regards as the equivalent of such knowledge, and is acted upon to the injury of the other party, such misrepresentation will amount to fraud warranting a court of chancery in setting aside any contract induced in whole or in part thereby. (*Douglass* v. *Treat,* 246 Ill. 593; 12 I.L.P., Contracts, sec. 122.) In *Noll* v. *Peterson,* 338 Ill. 552, this court expressly held that the representation of rentals to be derived from properties was not a mere expression of opinion, but the statement of a present fact which could amount to fraud justifying the recission of the transaction.

Here, the contract sued upon recites that plaintiff acted as real-estate broker in the defendant's behalf and that plaintiff was the "procuring party in connection with these transactions." At the same time, defendant's answer alleges that he was induced to enter into the transaction when plaintiff "represented" and "guaranteed" that the net income from the properties would be $50,000. Under the circumstances we believe that these representations extend far beyond expressions of personal opinion, and that all the elements necessary to raise an issue of fraud and a breach of fiduciary relation were sufficiently pleaded.

It is contended by plaintiff that the charge of misrepresentation alleged is not available as a defense because it does not relate to the contract sued upon, the said contract not having been entered into until one month and five days after the purchase of the property had been completed. The contract itself, however, shows that the purchase and brokerage-fee contract were so inextricably bound together as to be but parts of a single transaction, so that what was the inducement for one was the inducement for the other. Additionally, it is suggested by plaintiff that defendant was himself an experienced owner of real estate who would not

place full and total reliance on his broker, and that by the time the fee contract was entered into defendant had, or in the use of reasonable care for his own protection should have had, sufficient time to know and determine the income from the properties. Both matters, in our opinion, are factual matters and the subject of proof. On the state of the pleadings, we conclude that defendant was entitled to a hearing on the issue of misrepresentation.

Nor do we find "sham" or "frivolity" in defendant's allegations that it was the intention of the parties to the contract that plaintiff was to have only a 10% beneficial interest in the trust, rather than a fee interest. While the contract does state that the plaintiff "shall receive a 10% fee interest in each of said properties," no provision was made as to how or when he was to receive it, nor was there any provision made for a deed, which both of these parties must have known was necessary. Further, the balance of the contract, which reflects that plaintiff was to be saddled with none of the burdens of ownership and speaks in terms that plaintiff could "assign" his interest only to his heirs, and that he was only conditionally entitled to income, is inconsistent with what plaintiff here calls an intent to confer upon him a "fee simple absolute." We do not venture to say here what the parties did intend. But what we do say is that the contract is ambiguous and in need of construction, and that the allegations of defendant's answers were sufficient to fairly raise and present the issue for determination.

Two more defenses pleaded by defendant need be mentioned but briefly. Whether or not plaintiff is entitled to the remedy of specific performance depends in the main on whether there is a finding that the contract was entered into fairly and understandingly, and unattended by fraud or other circumstances which would prevent equity from decreeing its enforcement. (See: *Smith* v. *Farmers' State Bank of Alto Pass,* 390 Ill. 374, 379-380, and cases there

cited.) And should it be determined it was the intent of the contracting parties that plaintiff was to have a fee-simple interest in the real estate, we agree with the trial court that there is in the contract, neither an express nor an implied agreement not to partition the land.

For the reasons stated the decree of the circuit court of Cook County is reversed and the cause is remanded to that court with directions to proceed in a manner consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*