**CLASSIC BOWL, INC., Plaintiff-Appellant,**

v.

**A M F PINSPOTTERS, INC., Defendant-Appellee.**

**No. 16622.**

United States Court of Appeals
Seventh Circuit.

Nov. 13, 1968.

Joseph B. Lederleitner, William P. Nolan, Robert H. Aronson, Pretzel, Stouffer, Nolan & Rooney, Aronson & Aronson, Chicago, Ill., for plaintiff-appellant.

Branko M. Steiner, Chicago, Ill., for appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is a suit to recover damages sustained by loss of the benefit of the bargain in a contract with reference to the purchase of thirty-eight pieces of bowling alley equipment known as pinspotters. Count 1 of the complaint alleges fraud in

the inducement of the contract, and Count 2 is based on breach of warranty.

At the close of plaintiff's case, the trial court directed a verdict for the defendant and judgment was entered thereon.

Prior to the occurrences relied on, plaintiff's attorney and manager had had eighteen to twenty years' experience as a practicing attorney. Also, for some years, he had owned and conducted, at Morton Grove, Illinois, the business of operating thirty-eight bowling lanes and selling allied merchandise to the general public.

Defendant AMF is in the business of manufacturing and leasing automatic pinspotters and selling bowling supplies to bowling lane establishments and to the general public. From the inception of its entry into the business of manufacturing automatic pinspotters and up to January 8, 1962, the defendant did not offer its automatic pinspotters for sale but only would lease them under a lease agreement at a specified rental charge.

On March 14, 1958, Classic Bowl, Inc. (Classic) and AMF Pinspotters, Inc. (AMF) entered into a lease agreement under which AMF leased to Classic and installed in its premises in Morton Grove, Illinois, thirty-eight AMF automatic pinspotters and related equipment. The term of the lease was ten years.

On January 8, 1962, AMF sent to its lease customers a letter enclosing a copy of an announcement which had run in the Wall Street Journal which, in effect, offered the lessees the option of purchasing the leased machines at a price of $8450 each, less a depreciation factor of 10% per year and permitting the exercise of the option on or before September 30, 1962. The letter was signed by T. E. Meade, Vice President of Sales.

On January 26, 1962, AMF sent out another letter to its leasing customers confirming the previous offer and spelling out in greater detail, the terms of purchase.

On September 20, 1962, Classic accepted the defendant's offer by signing and transmitting the letter of January 26, 1962 to AMF with the required partial down payment of $3,800.

Classic claims that after the new model pinspotters came on the market, the pinspotters which it had purchased were worth no more than $2,000 each, and in this suit seeks to recover $121,072.80, the difference between the purchase price and the alleged value of $76,000 plus the cost of the ball exit systems in the amount of $19,661.20, or a total of $140,734.

Plaintiff's claim of fraud is based on statements made by Frank Mueller, a Regional Vice President in charge of sales of AMF, and by Special Equipment Salesman Jack Laner, at plaintiff's place of business in June 1962. On that occasion, plaintiff's president, Aronson, asked these men why defendant was selling its leased pinspotters and specifically whether defendant was testing a new automatic pinspotter and whether AMF was coming out with a new machine.

According to plaintiff's testimony, the AMF representatives denied they knew of any such testing and plans. Evidence shows that at least Mueller knew that AMF had been testing a new pinspotter. In fact, the new 82–70 pinspotter was officially sanctioned by the American Bowling Congress on April 6, 1962.

Pertinent to the question of testing by AMF, Paragraph 4 of the lease agreement with Classic obligated AMF to "Continue such activities to develop improvements to the machines. * * *" Aronson is charged with knowledge of this provision of the contract which he signed.

In the conversation between Aronson and Frank Mueller, the latter testified that he suggested to Aronson that he contact the people in New York (AMF headquarters) to clarify the situation at a higher level. Aronson had the opportunity to deny this testimony by Mueller but he did not do so. It stands uncontradicted.

The only person who had written to Classic upon behalf of AMF was T. A.

Meade, defendant's vice president in charge of sales and who was located at the AMF New York headquarters. Aronson was well acquainted with Meade but he made no effort to contact Meade in spite of the fact that Aronson talked to the AMF New York office by long distance telephone on occasions during the period he was considering the purchase of the pinspotters.

Mr. Aronson hired attorneys to handle the contract to purchase the pinspotters. Apparently there was no suggestion from Aronson to his attorneys that the contract contain a provision that the purchase of the machines and the cancellation of the lease was subject to the promise that a new pinspotter machine would not be marketed by AMF within some specified time in the future.

In Wilkinson v. Appleton (1963), 28 Ill.2d 184, 190 N.E.2d 727, on pages 729–730, the Supreme Court stated: "Broadly speaking, for a misrepresentation to constitute fraud which invalidates a contract, it must be a representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and known by the party making it to be false, or not actually believed by him on reasonable grounds, to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement."

We also keep in mind the fundamental rule "fraud is not to be presumed, but must be affirmatively established by clear and convincing proof of each and every essential element." Borowicz v. Chicago Mastic Company, 7 Cir., 367 F. 2d 751 (1966).

Also pertinent is the established principle that fraud in the inducement must be based upon representation of a past or existing fact and that it cannot rest on a promise to do an act in the future. The same rule would apply to a promise to abstain from doing an act in the future.

The complaint herein charges that in June 1962, defendant made two specific misrepresentations: 1) that AMF did not have a new automatic pinspotter, and 2) that it was not presently testing a new automatic pinspotter.

The evidence shows that in June 1962, defendant did not have a new machine ready for the market. The 82–70 model which it was testing was first made in prototype rather than in commercial form. But Aronson knew that the lease agreement obligated AMF to develop improvements to the pinspotting machines. It would be very unrealistic to believe that Aronson was convinced that the Company was not, in fact, engaged in continuous testing of contemplated improvements in the pinspotter machines and that it would, at some future date, bring out a new model.

As to the alleged fraud in bringing out a new machine, Aronson had been told by Mueller that hundreds and thousands of dollars had been spent by AMF in research and development, and that the Company would continue to test new machines and that the research and development program with reference thereto would continue.

Furthermore, plaintiff should not be permitted to recover on the basis of fraud where he was invited to contact the head office of AMF in New York "to clarify the situation on a higher level." He did not choose to act on this advice.

AMF may well have had reasons for keeping the news of its new model pinspotter from its competitors, but there would seem to be no good reason why such information would be kept from one of its lessees.

Aronson, the lawyer, if in fact he was relying on the statement made by the local representative of AMF, could fully have protected himself by inserting a short sentence into the contract. Furthermore, he had several opportunities while talking on the telephone to AMF headquarters in New York, to make in-

quiry of Mr. Meade who was the vice president in charges of sales.

■■ Aronson had no right to remain indifferent to a situation and then, at a later date, claim reliance. "Without proof of such reliance, an action for fraud will fail." Illinois Rockford Corporation v. Kulp, 88 Ill.App.2d 458, 232 N.E.2d 190, 198.

After the dispute arose, AMF offered to cancel the contract of sale and to again put in effect the lease agreement. While this would indicate good faith on the part of AMF, it is not of controlling importance as a plaintiff claiming fraud has a choice of remedies. He can affirm the contract and ask for damages as was done here.

■ Defendant argues that in any event, plaintiff did not suffer any damage. Defendant says that by the very fact that the pinspotters which were formerly leased, were purchased by plaintiff, such purchase relieved plaintiff from the obligation of paying rental of $30,400 per year for five and a half years, resulting in a saving of $167,200. The total damages claimed in the complaint were $140,734. But the test is not whether the plaintiff was better off having purchased the machines, even granting any decrease in value caused by the introduction of the new machine.

■ The true test is whether the plaintiff was deprived of the benefit of his bargain. Patterson v. Nick, 17 Ill. App.2d 414, 149 N.E.2d 786 (1958); Antle v. Sexton, 32 Ill.App. 437; 19 Ill. Law and Practice, Fraud Sec. 46. Plaintiff had the burden of demonstrating that the introduction of the new model caused a decrease in the value of his machines. The plaintiff paid $5,186.13 each for the machines, which apparently was their value at that time. In an attempt to establish a different value after the new model was introduced, plaintiff produced a witness who testified that he purchased twenty-four AMF pinspotters damaged by fire in 1964, repaired them and sold them for $3,875 each. They were of a different model. The witness further stated that he did not think that the value of those machines had any bearing on the value of machines that are operating normally and in an existing establishment. He also said that the machines would have been worth a lot more in 1962. There is also evidence that the rate of depreciation is substantial, making comparisons between various machines hazardous. This witness did not indicate that the price received by him for his machines was adversely affected by the introduction of AMF's new model.

The only other evidence is a statement made by the plaintiff to AMF representatives that his machines were now worth only $2,000. The statement did not include any foundation for that belief other than plaintiff's opinion.

■ Damages must not be speculative or probable and they must be proved with a reasonable degree of certainty. Central Illinois Light Company v. Stenzel, 44 Ill.App.2d 388, 195 N.E.2d 207 (1964); Falejczyk v. Meo, 31 Ill.App.2d 372, 176 N.E.2d 10 (1961). They must also be proven to be the proximate result of the complained of wrong. Johnston v. City of Galva, 316 Ill. 598, 147 N.E. 453, 38 A.L.R. 1384 (1925). The evidence produced here by the plaintiff was inadequate.

■ A verdict ought to be directed except "where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." Smith v. J. C. Penny Company, 7 Cir., 261 F.2d 218, 219 (1958). Here the evidence was not sufficient to permit reasonable men to conclude that damages had been adequately established.

Count 2 of the complaint alleged breach of warranty. There is very little discussion on this point in the briefs. We hold the facts in this case do not establish the claim of breach of warranty.

Judgment
Affirmed.