(No. 89-CC-0782–

FIRST OF AMERICA BANK a/k/a UNITED BANK OF ILLINOIS, Claimant, *v.* THE STATE OF ILLINOIS; ILLINOIS FARM DEVELOPMENT AUTHORITY, Respondents.

*Order for summary judgment filed March 24, 1992.*

*Opinion filed May 6, 1996.*

HINSHAW, CULBERTSON, MOELMANN, HOBAN & FULLER (GEORGE GILLESPIE, of counsel), for Claimant.

JIM RYAN, Attorney General (KAREN MCNAUGHT, Assistant Attorney General, of counsel), for Respondents.

## ORDER

RAUCCI, J.

This cause coming on to be heard on Claimant's motion for summary judgment, the Court having heard oral argument, finds that at the oral argument, the Respondent sought to file a written response. Because we previously had granted four extensions of time to file a response, we denied leave to file the belated response, but we did allow Respondent leave to file the affidavit of Donald K. Cochran, the current director of the Illinois Farm Development Authority (IFDA). Claimant has moved to strike that affidavit.

The affidavit will be stricken.

The affidavit is deficient in many respects. The affidavit is conclusory, does not identify the documents upon which the affiant's opinions are based, does not attach any documents, concludes that Claimant violated section 11.01 of the Tri-Party Agreement while no affirmative defense raising that issue has been pled, and makes assertions about information being "discovered" by IFDA but does not reveal that basis for the discovery or the affiant's personal knowledge of it.

We proceed to consider the unrebutted motion for summary judgment. The motion asserts that Respondent

IFDA guaranteed a $300,000 loan made by Claimant to Laurence and Carolyn Richardson whereby Respondent agreed to pay Claimant 85% of the outstanding principal and interest in the event of a default under the loan.

On March 19, 1987, Respondent purported to revoke the guarantee under section 7 of the Tri-Party Agreement which, pursuant to section 7.03, became effective 90 days after receipt by Claimant. The Claimant received the notice of revocation on March 24, 1987. Therefore, the effective date of revocation was June 25, 1987.

On April 29, 1987, the Richardsons filed a bankruptcy petition. This constituted an act of default pursuant to section 8.01.

At oral argument, Respondent asserted that the act of default was not complete until the end of the 90-day cure period provided in section 8.01. We need not decide this issue since the State Guarantee provides in pertinent part:

"This State Guarantee is hereby issued to Lender in accordance with all of the terms and conditions of the Tri-Party Agreement, * * *

 1. Provided that Lender has complied with all of the provisions of the Tri-Party Agreement, *and no condition exists which would allow the Authority to revoke the State Guarantee as provided in Section 7.01(a), (b), or (c) of the Tri-Party Agreement* the Authority hereby guarantees the prompt payment, when due, whether by an acceleration or otherwise, of a portion of the Loan * * *." (Emphasis added.)

The letter of March 19, 1987, notifying the Claimant of the revocation referred only to section 7.01. The letter was signed by Ronald L. Bailey who was then the executive director of IFDA. In his deposition, Mr. Bailey asserted that the violation of subsection (a) was the basis for the notice of revocation.

Thus, the State Guarantee only requires payment if in fact "* * * no condition exists which would allow the Authority to revoke the State Guarantee as provided in Section 7.01(a) * * *."

We previously denied the Respondent's motion for summary judgment because genuine issues of fact exist in this case. Those factual issues still exist.

It is therefore ordered:

1. The affidavit of Donald K. Cochran is stricken.

2. The Claimant's motion for summary judgment is denied.

## OPINION

JANN, J.

This matter was heard by Commissioner Bruno P. Bernabei on November 19, 1992. Final briefs were not received until March 30, 1994. Oral argument was requested and held before the Court on May 5, 1995.

Claimant, United Bank of Illinois, a/k/a First of America Bank (hereinafter referred to as "Bank"), brought this action against Respondent, Illinois Farm Development Authority (hereinafter referred to as "IFDA"), alleging that Respondent breached a contract by revoking a guarantee after determining that Bank had made material misrepresentations on the financial statement submitted in support of the guarantee application.

The Bank alleges that IFDA breached the contract when it revoked the guarantee since the contract did not allow for such revocation; that the written notice of revocation was defective and that the IFDA improperly refused to pay the guarantee after the occurrence of a bankruptcy by the borrowers.

In its defense, the IFDA has asserted that because Claimant fraudulently induced it into making the guarantee, the contract is void; that the guarantee could be revoked if the collateral was insufficient and that the revocation of the guarantee became effective prior to Claimant's demand for payment.

Laurence and Carolyn Richardson, who were engaged in farming, had been customers of the Bank for many years prior to 1985. Ken May, executive vice-president of the bank, testified that he served the Richardsons on many agri-business loans for many years and that he was familiar with the farm equipment purchased and owned by them, as well as farm equipment owned by John Richardson, son of Laurence Richardson.

In late 1985, the IFDA announced the State guarantee program for restructuring agriculture debt and started a program to target farmers who were in distress, but not so in debt that they could not recover financially. To be eligible for the guarantee, the debt-to-asset ratio of the borrower was required to be between 40 percent and 65 percent. To receive an 85 percent State guarantee on a loan, a lender such as the Bank, would promise to lend the borrower money at a reduced rate of interest. In consideration of the promises made by borrower and lender, the IFDA agreed that the lender would be guaranteed 85 percent of the loan plus accrued interest if the borrower defaulted.

The Richardsons, through the Bank, made an application to IFDA for a State-guaranteed loan, which application was among the first to be processed in 1986. The application was submitted to IFDA on February 10, 1986, and was accompanied by a letter from Ken May pledging that the Bank would continue to provide the Richardsons with a line of credit so that they could sustain their hog raising operation and further that the Bank was setting up a "special savings account" to insure timely payments. The letter further stated that the borrowers had been long-time customers of the Bank and that the writer was familiar with the Richardson operation and further that the Bank was interested in the Richardson

farm operation and was willing to cooperate with the borrowers. There is no question that the Bank was aware that the IFDA could and would rely upon the truthfulness, accuracy and completeness of all documents submitted to it by the borrower or by the lender.

The first application from the Richardsons exceeded the 65 percent debt-to-asset ratio and thereafter, on March 13, 1986, another application was submitted by the Bank with a debt-to-asset ratio of 64.996764 percent, barely within the limits prescribed by the IFDA guidelines. Ken May, the Bank's executive vice-president, assisted the borrowers in preparation of the loan application, made representations that the financial statements were true and correct and surely intended that the IFDA rely upon said representations.

In the first financial statement submitted to the IFDA on or about February 10, 1986, the borrowers and the Bank did not list a one-half interest in a home owned by Richardson's parents. Mr. May made a copy of an unrecorded copy of a deed of the parents' home purporting to convey an interest to the borrower and submitted said copy with the second application to IFDA on or about March 13, 1986. The testimony was that Mr. May submitted the copy of the deed, even though he was told that the deed had been destroyed within one week following February 25, 1986. Although the Richardsons told Mr. May they did not have an interest in the parents' home, the Bank did nothing to advise the IFDA of this important fact until March 10, 1987, more than one (1) year after the Bank and the borrower had listed the interest on the financial statement. There is no question that the interest shown on the financial statement played a part in inducing IFDA to guarantee the $300,000 loan.

At oral argument, the Bank's counsel argued that Mr. May was not aware of the purported one-half interest in

the home until so advised in a financial statement dated December 1, 1986, from the M & I Bank in Beloit, Wisconsin, and that Mr. May did disclose this interest in a timely manner. Counsel argued that contrary statements made by Mr. Richardson were motivated by revenge as a result of his bankruptcy.

Mr. May also suggested to the borrower that since he had co-signed a loan with his son, and eventually paid for certain equipment, he could list the son's equipment on the financial statement being submitted. It was testified to that at least eight (8) items of equipment belonging to the son were listed on the borrowers' application for the IFDA guarantee.

At oral argument, Claimant's counsel alleged that the Bank had taken blank U.C.C. statements on equipment from both the father and son and that the assets were not specifically identified until the senior Richardson's bankruptcy.

Prior to the IFDA application, the Richardsons had transacted business with the Bank and dealt with Ken May for many years. Mr. May made hundreds of loans to the Richardsons over the course of their business relationship and when the Richardsons initially set up their hog operation and were in need of short term loans, the Richardsons would see May at least once or twice a month.

Mr. May testified that he sent a cover letter with the application under date of February 7, 1986, stating that the Bank would provide the borrowers with a line of credit so that they could be able to repay IFDA. The guaranteed loan was approved May 1, 1986, and the Bank made one more loan to the Richardsons on May 14, 1986, but did not make any more loans thereafter and cut off the line of credit to the borrowers. The Bank did not tell

IFDA until December 10, 1986, that the borrowers line of credit had been revoked. In fact, the line of credit was cut off during the period between 14 days and 35 days after the loan had been guaranteed. At no time did the Bank notify IFDA that the special savings account, as represented, had not been set up. The net result of the revocation of the line of credit and the failure to set up the special savings account was a negative cash flow and the lack of available funds for loan payments, thus preventing continuation of the farm operation.

Although the Bank had concerns about the Richardsons' farming operation in June of 1986, being a mere 35 days after the commitment was given to guarantee the loan, Claimant did not deem it proper to inform IFDA about the money problems until December 10, 1986, or possibly as late as January 14, 1987. It is important to note that when Mr. May contacted IFDA, he did not inform them of the line of credit revocation or the failure to set up the special account which it had promised to do.

Although IFDA revoked the guarantee of the loan on or about March 19, 1987, Claimant did not give notice of the default until June 26, 1987.

The issue before the Court is whether sufficient and credible evidence was introduced to sustain Respondent's position that IFDA was induced to guarantee the loan to the borrower through fraudulent misrepresentation and that, therefore, the guarantee of the loan was void.

As set out in Respondent's brief, to constitute fraud warranting a court of equity to rescind a contract, a misrepresentation must be in the form of a statement of material fact, made to induce another party to act; it must be false and known by the party making it to be false or not actually believed by him on reasonable grounds to be

true; and the one to whom the misrepresentation is made must be ignorant of the falsity, must reasonably believe the falsity to be true, must act thereupon to his damage and, in so acting, must rely upon the truth of the statement. *Wilkinson v. Appleton* (1963), 28 Ill. 2d 184, 187, 190 N.E.2d 727, 729-30; *Roda v. Berko* (1948), 401 Ill. 336, 339-40, 81 N.E.2d 912, 924.

Fraud in itself is an absolute defense which can be asserted by the State of Illinois in the Court of Claims. (See *Metal Air Corp. v. State* (1977), 32 Ill. Ct. Cl. 103.) "Whenever any fraud against the State of Illinois is practiced or attempted by any Claimant in the proof, statement, establishment, or allowance of any claim or any part of any claim, the claim or part thereof shall be forever barred from prosecution in the court." 705 ILCS 505/14.

There is no dispute that fraud perpetrated by a Claimant will bar a claim, and the State has the burden of proving such a defense by clear and convincing evidence.

In the instant case, the IFDA relied upon the misinformation given to it by the Bank, through Ken May and Laurence Richardson.

Evidence of fraud by Bank and borrower reared its ugly head a number of times. It must be remembered that Mr. May assisted in preparing the loan application and prepared the balance sheet and other documents which listed a one-half interest in the home hereinabove mentioned. The unrecorded deed to the home was destroyed and it appears Mr. May was so advised, but nevertheless, the non-existent interest was never removed from the loan application which was forwarded to IFDA and which was approved on May 1, 1986. In addition to the non-existent interest in the real estate, Mr. May listed a

number of items of farm equipment on the loan application that did not belong to the borrowers but, in fact, were items owned by John Richardson. Mr. May had been a loan officer and had transacted business with the borrower over many years and had also made a number of loans to John Richardson who had given the Bank a security interest on equipment owned by him but which was actually listed on the borrower's list of farm equipment. By his own testimony, Mr. May stated that he was familiar with the equipment owned by each of the Richardsons.

Claimant's counsel asserted that no inference of fraud may be made if there was laxity by a bank vice-president in monitoring a loan. After oral argument, Claimant submitted a copy of *Brazell v. First National Bank and Trust Co. of Rockford* (7th Cir. 1992), 982 F.2d 206. In this case, guarantors of an auto dealer's floor plan loan brought a fraud action against the bank for breach of contract. The bank counterclaimed, seeking to enforce the guarantor's guarantee of the dealership's debt to the bank. Judgment was entered against the bank on the jury's finding of fraud and rejection of the counterclaim. Appeal was taken and the court found there had been no evidence that the bank made any representations to the Brazells to induce them to issue the guarantee. The Brazells' case was based primarily on the bank's negligence in monitoring the collateral, i.e., the floor plan for the dealership. The court found, "Carelessness by itself, however, cannot support an inference of fraud. Otherwise the tort of fraud would be little if anything more than a special case of the tort of negligence." *Brazell* at 207-208.

In what seems to be an attempt by the Claimant loan officer to transform a bad loan into a good loan, Mr. May made, what is without question, material misrepresentations

to IFDA. This was done in order to secure a guaranteed loan for the customer, thus saving the Bank a substantial loss.

In his testimony, Laurence Richardson admitted that he provided false information to IFDA because he was in a desperate position and believed his banker when he was told that his line of credit would be cut off. His testimony implicated Mr. May in the scheme and sequence of events undertaken by the Bank and the borrower. We find the evidence is clear and convincing that the Claimant Bank intended for IFDA to rely upon the misrepresentation concerning the borrower's interest in the real estate, the listing of equipment not owned by the borrower, as well as the failure to establish the special savings account from the sale of hogs to insure loan payments. This constitutes fraud.

Because of the fraud and misrepresentation as hereinbefore noted by Claimant as well as the borrower, the claim for damages in the amount of $167,802.30 is denied.