DIANE JAMES, Plaintiff-Appellant, v. LIFELINE MOBILE MEDICS, Defendant-Appellee.

Fourth District Nos. 4—02—0972, 4—02—1069 cons.

Argued May 14, 2003.—Opinion filed June 30, 2003.

McCULLOUGH, J., dissenting.

Lisa Corwin (argued), of Walker & Wylder, Ltd., of Bloomington, for appellant.

William C. Wetzel (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Diane James, filed a retaliatory discharge case against her employer, defendant, Lifeline Mobile Medics. In May 2002, plaintiff won a jury verdict of $243,969.64 and the trial court entered judgment thereon. In August 2002, plaintiff started proceedings to collect her judgment and defendant filed an appeal (No. 4—02—0712). In September 2002, the parties agreed to settle the case with defendant to pay plaintiff $200,000 on September 17 and $25,000 on October 17, 2002. Defendant failed to pay.

In October 2002, plaintiff issued new garnishment summonses, and the trial court entered a ruling purporting to reform the settlement agreement. Defendant did not pay. In November 2002, defendant moved to terminate supplementary proceedings and for sanctions. The trial court ordered defendant to pay, dismissed the supplementary proceedings, and denied sanctions. Defendant paid by check, which bounced. The court again ordered defendant to pay $227,052.76 by cashier's check. Defendant paid. In December 2002, plaintiff requested a court order directing defendant to pay the $27,875.97 remaining due on her judgment, which the trial court denied. Plaintiff appeals, arguing (1) the trial court lacked jurisdiction in October 2002 to alter plaintiff's judgment and grant defendant's motion to enforce the settlement agreement; and (2) the trial court erred in enforcing a contract defendant breached and procured through misrepresentation. We reverse.

## I. BACKGROUND

On May 13, 2002, after a jury trial, plaintiff received a verdict in her favor and was awarded $243,969.64 damages. On May 31, 2002, defendant filed a motion for extension of time to file a posttrial motion and also sought a stay of judgment. The trial court granted defendant the extension, and on July 8, 2002, defendant filed its posttrial motion. On August 6, 2002, after the denial of the motion in all respects, plaintiff started proceedings to collect on her judgment. On August 26, 2002, defendant responded by filing a motion to stay enforcement of the judgment, which it never noticed for hearing, and by filing a notice of appeal. *James v. Lifeline Mobile Medics*, 4—02—0712 (January 22, 2003) (dismissed for defendant appellant's failure to file a docketing statement).

Meanwhile, defendant contacted plaintiff to discuss settlement, offering $150,000. On September 10, 2002, the parties agreed to settle. The settlement agreement provided, in exchange for plaintiff signing a release, defendant would pay plaintiff $200,000 on or before September 17, 2002, and an additional $25,000 on or before October 17, 2002.

Defendant did not make its first payment on September 17, and when plaintiff demanded payment, defendant said the money was "available" and "can be paid at any time" but would not be paid pending resolution of a tax issue that plaintiff had already informed defendant had no bearing on the settlement. Plaintiff then had citations to discover assets issued in order to collect on her original judgment. Defendant filed a motion to stay the citation proceedings, to enforce the settlement agreement, and for sanctions. In response, plaintiff filed a motion for turnover order to collect the amount of the judgment from defendant. On October 17, 2002, the trial court held a hearing on all pending motions. The trial court took the matter under advisement. On October 21, 2002, plaintiff issued new garnishment summonses. On October 22, 2002, the trial court issued its ruling, "reforming" the settlement agreement to provide defendant should pay plaintiff $225,000 plus "judgment interest" of 9% from September 17, 2002, until paid.

Defendant did not comply with the trial court's order and on November 4, 2002, filed a motion to terminate the supplementary proceedings begun on October 21, 2002, and for sanctions. Plaintiff filed a response to this motion, claiming the court did not have jurisdiction to modify the judgment that she still held and was entitled to enforce as enforcement had never been stayed. On November 8, 2002, the court again ordered defendant to pay plaintiff $225,000 plus interest, dismissed the supplementary proceedings, and denied sanctions. Defendant issued a check to plaintiff, which bounced. On November 20, 2002, the court ordered defendant to pay plaintiff $227,052.76 by cashier's check. Plaintiff received the check and filed a notice of appeal on November 21, 2002, appealing the court's orders of October 22 and November 8 (No. 4—02—0972). On December 6, 2002, plaintiff filed a second motion for turnover order, requesting the court order defendant to pay the remainder due plaintiff on her judgment which, as of November 26, 2002, was $27,875.97. On December 23, 2002, the trial court denied this motion. Plaintiff filed a notice of appeal that same day (No. 4—02—1069), and both appeals were later consolidated on plaintiff's motion.

## II. ANALYSIS

On appeal, plaintiff contends that (1) the trial court did not have jurisdiction in October 2002 to alter her judgment or enforce the settlement agreement once defendant's appeal was filed and (2) the settlement agreement was unenforceable in any case because it was both breached by defendant and obtained by defendant as a result of misrepresentation.

## A. Trial Court Had Jurisdiction

■ Plaintiff contends the trial court lacked jurisdiction to take the actions it did because once defendant's appeal was filed jurisdiction was limited to the "supplementary proceedings" provided in section 2—1402 of the Code of Civil Procedure (735 ILCS 5/2—1402 (West 2002)). The question is whether a trial court retains jurisdiction to enforce a settlement agreement reached after the court otherwise lost jurisdiction because of the filing of a notice of appeal. Enforcement of a settlement agreement is a collateral matter and is not governed by the issues raised in defendant's appeal, *i.e.*, that defendant has no liability to plaintiff or, alternatively, that the amount of damages is too high. The trial court had jurisdiction to entertain supplementary proceedings involving the settlement agreement and enforcement as well as to consider plaintiff's efforts to collect her judgment. The question now presented is whether the settlement agreement still existed and could be enforced or reformed by the trial court.

## B. Propriety of Enforcing Purported Settlement Agreement

■ Settlement agreements are governed by contract law. *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 234, 684 N.E.2d 1355, 1359 (1997); *City of Chicago Heights v. Crotty*, 287 Ill. App. 3d 883, 885, 679 N.E.2d 412, 413 (1997). Under contract law, a party in breach may not enforce the contract. *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599, 507 N.E.2d 164, 167-68 (1987). A party seeking to enforce a contract has the burden of proving he has substantially complied with all material terms of the agreement. *Goldstein*, 154 Ill. App. 3d at 599, 507 N.E.2d at 168. A party who materially breaches a contract cannot take advantage of the terms of the contract that benefit him, nor can he recover damages from the other party to the contract. *Goldstein*, 154 Ill. App. 3d at 599, 507 N.E.2d at 168.

### 1. *Defendant Breached Agreement*

■ In this case, the settlement agreement required defendant to pay plaintiff $200,000 on or before September 17, 2002, and $25,000 on or before October 17, 2002. Defendant made no payments at all. At the hearing on October 17, 2002, evidence was presented defendant did not pay any of the money owed plaintiff under the settlement agreement because defendant's counsel consulted a tax expert, who informed him that FICA withholding would be due on that portion of the settlement amount that encompassed the $13,499.64 in damages awarded by the jury for lost medical benefits to plaintiff. Plaintiff's counsel disputed any FICA withholding was necessary. Further, evidence indicated the amount of FICA due under the tax expert's theory was approximately $1,000.

The amount possibly due for FICA withholding was only a small portion of the settlement amount due plaintiff. The record offers no indication why defendant could not have made at least the first installment payment to plaintiff of $200,000 if not also most of the second installment of $25,000 while a definitive determination was made on the tax-liability issue. Thus, defendant did not demonstrate it performed the contract, nor did it offer a legally recognized excuse for its failure to perform. Defendant breached the settlement agreement by not paying plaintiff anything and, therefore, is not entitled to enforcement of the agreement.

### 2. Whether Defense Counsel Misrepresented Defendant's Financial Situation

■■ ■ Plaintiff also contends the settlement agreement was obtained by defendant as the result of misrepresentations made by its counsel to plaintiff's counsel and is unenforceable for that reason.

> "Broadly speaking, for a misrepresentation to constitute fraud which invalidates a contract, it must be a representation in the form of a statement of a material fact, made for the purpose of inducing a party to act; it must be false and known by the party making it to be false, or not actually believed by him, on reasonable grounds, to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement." *Wilkinson v. Appleton*, 28 Ill. 2d 184, 187, 190 N.E.2d 727, 729-30 (1963).

Ordinarily, erroneous statements as to matters of opinion, such as representations of the value of property, do not amount to fraud avoiding a contract made in reliance thereon. *Wilkinson*, 28 Ill. 2d at 188, 190 N.E.2d at 730. However, where a misrepresentation relates to a specific extrinsic fact materially affecting the value of matters at issue and where that fact is one peculiarly within the knowledge of the speaker and the statement is made with knowledge of its falsity or what the law regards as the equivalent of knowledge and is acted upon to the injury of the other party, such misrepresentation will amount to fraud warranting a court to set aside the contract induced in whole or in part thereby. See *Wilkinson*, 28 Ill. 2d at 188-89, 190 N.E.2d at 730.

■ A party cannot benefit from a contract it obtained through misrepresentation.

> "Where one makes a positive statement to another, upon which the other acts in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent and from it the party guilty of fraud can take no benefit." *Halla v. Chicago Title & Trust Co.*, 412 Ill. 39, 46, 104 N.E.2d 790, 794 (1952).

The question to be determined is whether, under all the circumstances, the party seeking relief had the right to rely on the representations made. The representations must be viewed in light of all the facts of which the injured party had actual knowledge and also such as he might avail himself of by the exercise of ordinary prudence. *Halla*, 412 Ill. at 47, 104 N.E.2d at 794. Whether a party used ordinary prudence and due diligence is a question of fact to be determined by the trial court. See *Halla*, 412 Ill. at 47, 104 N.E.2d at 794-95.

The allegedly fraudulent statements at issue in this case include a letter from defense counsel to plaintiff's counsel dated August 19, 2002, in which it is stated:

"As I discussed, [defendant's] financial picture is dire if not desperate. This non-for-profit [*sic*] is losing $20,000 per month, and all indications are that losses will increase in the coming months as Medicare and Medicaid payments continue to be reduced. The company appears to have just enough cash on hand to meet its payroll and other outstanding obligations.

As I mentioned to you on Friday, I am passing along to you the full extent of Lifeline's ability to pay with this offer. In full settlement of the above matter, we are offering your client $150,000. I recognize this is not the figure that you were after nor does it meet the amount of the judgment, but it is the best that Lifeline can do without the specter of bankruptcy.

If [plaintiff] decides to execute on the judgment, bankruptcy will likely be the only option for [defendant]. Its current assets simply cannot [meet] a payment of the judgment and the payment of salaries to her co-workers. [Plaintiff's] co-workers will lose their jobs and, equally important, there will be no paramedic provider for Bloomington, Normal[,] or McLean County (fire fighters are not trained paramedics). In short, if [plaintiff] decides to execute on this judgment, there will be no paramedic service for our community."

The other allegedly fraudulent statement was made in a telecopier transmittal from defense counsel to plaintiff's counsel dated August 21, 2002:

"[Plaintiff's counsel], [p]lease call me at your earliest re: settlement in this matter. [Defendant's] board has decided to engage Bankruptcy counsel and the window of opportunity to resolve this claim is closing—[Defense counsel]"

Evidence at the hearing on October 17, 2002, indicated bankruptcy counsel may have been consulted at some time but nothing was actually done. Further, in correspondence dated September 18, 2002, only a month after the earlier communications, defendant's counsel stated "The $200,000 is available and can be paid at any time." Finally,

Anna Lee Fenger, chairman of the board for defendant, testified at the time the letter of August 19 was sent, unknown to plaintiff's counsel, defendant had a net worth of $1,400,000, $400,000 of which was in cash. Fenger also testified she signed the settlement agreement on September 11, 2002, to pay plaintiff the $200,000 on September 17 and the $25,000 on October 17, and after the agreement was signed, defendant transferred $200,000 to its checking account to make the payment.

Plaintiff argues she reluctantly negotiated with defendant based on these representations and agreed to accept the settlement. However, the evidence shows defendant had the funds to pay the actual judgment amount without filing for bankruptcy, and the settlement agreement should be rescinded because when a person is induced into a contract based on a misrepresentation, the contract may be rescinded. See *Sciarabba v. Chrysler Corp.*, 173 Ill. App. 3d 57, 61, 527 N.E.2d 368, 371 (1988).

The trial court found defendant had sufficient assets to pay the full amount of the judgment although it also appeared to have an uncertain financial future. The court further found, however, defendant's claims of impending bankruptcy to be "financial 'gloom and doom' hyperbole," which did not rise above the level of acceptable negotiation technique and plaintiff should have requested further financial information before concluding the settlement agreement.

The evidence suggests the representations of defense counsel about defendant's financial situation to be *mis*representations that go beyond the usual hyperbole of accepted negotiation techniques. We need not further address the issue because we have concluded the settlement agreement was breached and may not be enforced. Plaintiff is entitled to collect on her judgment.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

APPLETON, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully dissent. The standard of review, being manifest weight, supports affirming the trial court.

The majority concludes that the settlement agreement was breached and cannot be enforced. *Wilkerson* is discussed with respect to plaintiff's contention that the settlement agreement was obtained

by misrepresentation of defendant's counsel to plaintiff's counsel. *Wilkerson* discussed proof of misrepresentation sufficient to constitute fraud and the issue of fraud in relation to breach of fiduciary relation.

As to misrepresentation and fraud, the trial court stated:

"Plaintiff contends she was fraudulently induced into the agreement by representations of defense counsel as to defendant's financial status. \*\*\* Defense counsel did represent that if the defendant was forced to pay more than $150,000.00 defendant might face the 'spectre of bankruptcy.' This type of financial 'gloom and doom' hyperbole (the defendant actually had sufficient assets to pay the full amount of the judgment although it appears that defendant does have an uncertain financial future) does not rise above the level of negotiation technique. The plaintiff could have requested financial information from defendant to verify defendant's financial position before finalizing any settlement."

*Wilkerson* supports the trial court's order.

As to plaintiff's request that the agreement be rescinded, the trial court further stated:

"Plaintiff asks for rescission of the agreement as the remedy for defendant's nonpayment. Plaintiff points out that she has received no money yet and defendant could have tendered all the money except for the withholding claim by the defendant (approximately $1,000.00). Defendant contends that it is ready, willing and able to tender the settlement amount and just wants a determination of the tax question. Rescission is an equitable remedy and in view of the strong policy of the law in favor of settlement of disputes (*Cameron v. Bogusz*, [305 Ill. App. 3d 267, 711 N.E.2d 1194 (1999))], this Court will not rescind the settlement agreement. However, as a court of equity the court will reform the agreement to provide that defendant pay plaintiff, in addition to the full settlement amount of $225,000.00, judgment interest at the rate of 9% from the date of September 17, 2002, to the date of payment."

As stated, I would affirm the trial court.