**William C. WAGGONER et al., etc.,
Plaintiffs-Appellants,**

v.

**C & D PIPELINE COMPANY,
Defendant-Appellee.**

No. 77–3949.

United States Court of Appeals,
Ninth Circuit.

July 24, 1979.

---

54. 28 U.S.C. §§ 1821, 1920 (1976).

Wayne Jett, Los Angeles, Cal., argued for plaintiffs-appellants.

Jackson, Lewis, Schnitzler & Krupman, New York City, Eugene, Button, Los Angeles, Cal. (argued), for defendant-appellee.

Before HUFSTEDLER and SNEED, Circuit Judges, and SPENCER WILLIAMS,* District Judge.

HUFSTEDLER, Circuit Judge:

The trustees of four employee benefit trusts appeal a summary judgment award in an action against C & D Pipeline Co. ("C & D") for failure to make fringe benefit contributions allegedly required by a collective bargaining agreement. The question on appeal is whether the agreement requires contributions for all hours worked by employees who perform any covered work or only for the hours actually worked in covered employment. We hold that the agreement requires contributions for all hours worked by or paid employees who perform any work covered by the agreement.

I

The employee benefit trusts are established pursuant to the Master Labor Agreement between the International Union of Operating Engineers, Local Union No. 12 ("Local 12") and the Southern California General Contractors Associations, a group of multi-employer associations. Since June 21, 1968, C & D has been a party to a short-form collective bargaining agreement with Local 12 that incorporates by reference the terms of the Master Labor Agreement. The Master Labor Agreement requires C & D to contribute to the trusts at specified rates for "hours worked by (or paid) each employee under this Agreement." (Articles VIII, IX & X.) "[A]ll work falling within the recognized jurisdiction of the Union" is covered by the agreement. (Article I, section B(2).) The agreement applies "to all employees except . . . executives, superintendents, assistant superintendents, master mechanics, office engineers, timekeepers, messenger boys, office workers, or any other employee of the Contractors above the rank of craft foreman, except as herein provided." (Article I, section B(4).)

On July 23, 1969, Local 12 dispatched Donald J. Stark to C & D for work as a universal equipment operator. Stark worked for C & D as an operating engineer, employment covered by the Master Labor Agreement. Eventually, Stark rose to the position of president and managing officer of C & D. He continued to perform some work as an operating engineer, in addition to his new managerial duties. Beginning in June, 1971, Stark was placed on a salary. C & D continued to contribute to the trusts for Stark, but C & D reported and paid fringe benefit contributions only for the

---

* Honorable Spencer M. Williams, United States District Judge, Northern District of California, sitting by designation.

hours Stark actually worked as an operating engineer.

During an audit of C & D's payroll records on October 26, 1976, the trustees discovered that C & D was not paying fringe benefit contributions for all hours worked by Stark. After C & D refused to make up the alleged deficiency, the trustees filed this action pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to collect contributions allegedly due the trusts as well as liquidated damages and audit expenses.

The district court granted summary judgment to C & D. The court held that the terms of the Master Labor Agreement "unambiguously provide that C & D is obligated to pay fringe benefit contributions to the Trusts only with respect to those hours worked by (or paid) its employees when they are performing work described in the respective agreement or are otherwise covered by the terms of the agreement." The court held that under the Master Labor Agreement C & D "was not obligated to remit fringe benefit contributions for hours worked by (or paid) a member-employee in an executive-managerial capacity as opposed to hours worked by (or paid) said employee when working as an operating engineer."

## II

To ascertain the meaning of a collective bargaining agreement the terms of the agreement should be examined first. The Master Labor Agreement requires employer fringe benefit contributions for "hours worked by (or paid) each employee under this Agreement." (Articles VIII, IX & X.) This provision is ambiguous with respect to the contributions required for employees who perform both covered and non-covered employment. If the words "under this Agreement" are read as modifying "hours worked by (or paid)," the agreement may require contributions only for hours worked in covered employment. The words "under this Agreement" may also be read as modifying the word "employee." If an "employee under this Agreement" is anyone who performs some hours of covered employment, then the agreement may require contributions for all hours worked by employees who perform any covered employment.

This ambiguity is not resolved by reference to other provisions of the agreement. Article I, section B(4) excludes certain categories of workers (including "executives") from coverage except as otherwise provided in the agreement. While this provision means that contributions are not required for persons who work solely as executives, it apparently does not apply to employees who perform both executive duties and the operating engineer tasks. C & D itself concedes that contributions are required for hours that executives work performing operating engineer tasks. Moreover, Article I, section B(6) of the agreement requires that "[a]ll work performed and all services rendered by the employees for the Contractor shall be rendered under terms and provisions at not less than those contained herein." Thus the executive exclusion cannot be read as excluding from coverage executives who spend a portion of their time working as operating engineers. Since Article I, section B(4) excludes "executives," rather than "hours worked as an executive," it does not support C & D's position that contributions are required only for hours worked as operating engineers.

Although the language of the agreement is ambiguous, the parties have created a mechanism for resolving disputes over the interpretation of the Master Labor Agreement. Article V of the agreement establishes a Labor-Management Adjustment Board, composed of the individuals who negotiated the agreement, "for the express purpose of interpreting and enforcing all the terms and provisions contained herein." (Article V, section A.) The agreement binds the parties to abide by the decisions of the board. (Article V, section A(1).)

On July 26, 1972, the Labor-Management Adjustment Board adopted the following resolution interpreting the Master Labor Agreement:

"Resolved, that when an employee has been dispatched by the Union to a con-

tractor and the employee performs any work whatsoever covered by the Agreement, the contractor shall be obligated to pay fringe benefit contributions to the Trusts at the required rate for each and every hour worked by the employee or paid for by the contractor. Further, that in the event the payroll records of the contractor show that such an employee is paid by salary or any method other than hourly wages, then the employee shall be presumed to have worked for a minimum of forty (40) hours during each week of such employment and payment, and fringe benefit contributions shall be paid for all such hours."

This interpretation of the agreement requires employers to make contributions for all hours worked by employees who perform any work covered by the agreement. Because Stark was a salaried employee, C & D was required to make contributions for Stark based on a minimum of forty hours per week.

The Labor-Management Adjustment Board did not exceed its authority under the agreement in rendering this interpretation of the contract. Although Article I, section B(15)(a), denies the board the authority to settle "disputes between the parties concerning the payment or nonpayment of monies due the Trust Funds," it does not deprive the board of authority to interpret the agreement outside the context of individual disputes. The board's 1972 resolution was not an attempt to resolve a dispute over payments to the trusts, but rather an interpretation of the agreement. When a dispute over payments to the trusts subsequently arose, the trustees properly sought resolution of the dispute in federal court, rather than before the Labor-Management Adjustment Board.

The controlling force of the board's interpretation is not diminished because it was not expressly incorporated into the Master Labor Agreement when the agreement was amended in 1974. Once the agreement had been authoritatively interpreted by the board, there was no need to amend the contract to clarify employers' obligations to the trusts.

The board's interpretation of the agreement is supported by the need for a mechanism to police compliance with the agreement, as the National Labor Relations Board has recognized. (*Maas & Feduska, Inc.*, 234 NLRB No. 167.) A requirement that contributions be based on all hours worked or paid permits the trustees to rely on payroll records to determine if employers are making the proper contributions to the trust funds.

We hold that the interpretation of the Master Labor Agreement embodied in the Labor-Management Adjustment Board's resolution of July 26, 1972, is controlling. Thus, the agreement requires employers to make fringe benefit contributions for all hours worked by (or paid) employees who perform any work covered by the agreement. The district court's award of summary judgment to C & D is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Because we reverse the district court's award of summary judgment, we vacate the award of attorney's fees to C & D. We need not reach the question whether attorney's fees could be awarded to C & D by application of California Civil Code § 1717.

REVERSED.