Ronald E. THELIN, et al.; James Caporale, et al.; and Cement Masons' Pension Fund, Local 803, et al., Plaintiffs,

v.

Edward K. MITCHELL, ind., and d/b/a Edward K. Mitchell Construction Company, Defendants.

Nos. 80 C 0082, 80 C 0083.

United States District Court,
N.D. Illinois, E.D.

Dec. 22, 1983.

Marc M. Pekay and Charles A. Linn, of Arnold & Kadjan, Chicago, Ill., for plaintiffs.

Norman Thompson, Elmhurst, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

J. SAM PERRY, Senior District Judge.

NOW COMES the plaintiffs, RONALD E. THELIN, et al.; JAMES CAPORALE, et al.; and CEMENT MASONS' PENSION FUND, LOCAL 803, et al., by their attorneys, MARC M. PEKAY and ARNOLD and KADJAN, and submit these proposed Findings of Fact and Conclusion of Law.

## I. FINDINGS OF FACT.

1. (a) The plaintiffs, RONALD E. THELIN, et al., are the Trustees of the CEMENT MASONS' LOCAL 502 FRINGE BENEFIT FUNDS (hereinafter referred to as "Cement Masons' 502 Funds").

(b) The plaintiffs, JAMES CAPORALE, et al., are the Trustees of the LABORERS' PENSION AND WELFARE FUNDS (hereinafter referred to as "Laborers' Funds").

(c) The plaintiffs are also the CEMENT MASONS' PENSION FUND, LOCAL 803, et al., (hereinafter referred to as "Cement Masons' 803 Funds").

2. (a) The Cement Masons' 502 Funds have been established pursuant to Collective Bargaining Agreements heretofore entered into between Cement Masons' Local 502 ("the Cement Masons' 502 Union") and certain employer Associations.

(b) The Laborers' Funds have been established pursuant to Collective Bargaining Agreements heretofore entered into between the Laborers' District Council of Chicago and Vicinity and its affiliated locals ("the Laborers' Union") and certain employer Associations.

(c) The Cement Masons' 803 Funds have been established pursuant to Collective Bargaining Agreements heretofore entered into between Cement Masons' Local 803 ("the Cement Masons' 803 Union") and certain employer Associations.

3. The Funds named in paragraph 2 are express trusts created by written trust agreements executed by employer Associations representing construction contractors and the Union. Each such Fund was formed pursuant to and exists subject to the provisions of Section 302(c)(5) of the Labor Management Relations Act, as amended [29 U.S.C. Section 186(c)(5) ]. The Funds are express trusts established by the Union and employer Associations representing contractors engaged in business in the construction industry and have standing to sue pursuant to ERISA, 29 U.S.C. Section 1132(d)(1).

4. For all periods relative to this cause, defendant, Edward K. Mitchell, was a sole proprietor doing business as Edward K. Mitchell Construction Company (hereinafter called "Mitchell"), with its principal place of business located within this judicial district.

5. At all times material herein defendant, Mitchell, was an employer engaged in an industry affecting commerce.

6. Defendant, Mitchell, was engaged in the Construction Industry in the Chicagoland area as a concrete contractor for all periods relative to this cause of action.

7. (a) On July 1, 1971, defendant signed a Memorandum of Understanding with the Laborers' Union.

(b) On June 28, 1972, defendant signed a Memorandum of Understanding with the Cement Masons' 502 Union.

(c) On or about March 2, 1975, the defendant signed a Memorandum of Under-

standing with the Laborers' Union; and the defendant testified that this document was signed on or about November 1, 1974.

(d) On or about March 2, 1975, the defendant signed a Memorandum of Agreement with the Chicagoland Cement Masons' Unions, including Locals 502 and 803; and the defendant testified that this document was signed on or about November 1, 1974.

8. The Agreements signed by the defendants described above required, *inter alia,* the payment of fringe benefit contributions to the plaintiff Funds on behalf of all persons performing work covered by those contracts.

9. The respective Unions are labor organizations which bargain with various employer Associations and individual contractors regarding wages, hours, and working conditions.

10. On March 15, 1974, the defendants executed Installment Notes and Security Agreements to settle a prior lawsuit before Judge Tone, Case No. 73 C 1948. This Settlement Agreement was to pay fringe benefit contributions to the Laborers' Pension and Welfare Funds. Pursuant to the Settlement Agreement, defendants agreed to make installment payments for a five-year period.

11. In 1974, following the Settlement Agreement, defendants defaulted in their payments to the Laborers' Funds.

12. On November 1, 1974, defendant entered into a Memorandum to resolve the delinquent payments and the plaintiff Funds agreed to forebear on any foreclosure action against the defendant even though the defendant had given a mortgage on his home as collateral for the five-year installment payment.

13. In 1977 and again in 1978, the plaintiffs' Funds requested an audit of defendants' books and records to determine compliance with the Collective Bargaining Agreements to which the defendant was bound. The defendants refused to permit these audits.

14. In 1977, defendant maintains that he informed an auditor from Alexander Grant and Company that he had questions as to the Collective Bargaining Agreement.

15. Since November 1, 1974, defendant never forwarded any correspondence to the Unions or the Funds and never attempted to revoke, negate, disaffirm, or deny the Collective Bargaining Agreements.

16. In July, 1974, prior to executing the Agreements dated March 2, 1975, defendant maintains that a letter was sent to the Laborers' Union; however, no document was produced at trial.

17. Pursuant to the Memorandums of Agreement signed by the defendant as described in paragraph 7, the Collective Bargaining Agreements between the Union and Associations, as well as the Articles and Declaration of Trust creating the various Funds were incorporated therein.

18. Audits were performed by the firm of Richard J. Wolf and Company, Ltd., to determine whether or not defendant had made proper contributions to the plaintiff Funds. The defendant stipulated and I find that the individuals appearing on these audits and the hours as shown on the audits, and the computation of figures on the audits are accurate; and that the individuals did, in fact, perform work under the respective Collective Bargaining Agreements.

19. The following summary of the amounts as reflected upon the various audits, as well as the applicable period and costs incurred by the Funds to the auditor in securing these audits: a) For the Laborers' Funds for the period January 1, 1974, through March 31, 1980, $48,673.91 in contributions due and owing, plus an audit cost of $625.00 (See Exhibit 18); b) For the Laborers' Funds for the period April 1, 1980, through March 31, 1983, $6,613.20 in contributions due and owing, plus an audit cost of $400.00 (See Exhibit 19); c) For the Cement Masons' 803 Funds for the period January 1, 1974, through March 31, 1980, $811.04 in contributions due and owing, plus an audit cost of $100.00 (See Exhibit 23); d) For the Cement Masons' 502 Funds for the period April 1, 1980, through March 31, 1983, $93.94 in contributions due and

owing, plus an audit cost of $200.00 (See Exhibit 24).

20. The defendant maintained that, pursuant to an Installment Note (Exhibit 16) that no monies should be due for the period prior to November 1, 1974, and that the amount of the audit for the Laborers' Funds should be reduced by the amount of $4,090.24. I credit, however, the testimony of Raymond J. Holeman, Director of Field Representatives for the Laborers' Funds, that his computations of the amounts paid demonstrate that no monies were paid or collected for any period after December 31, 1974, so that all monies are due.

21. While I rejected defendants' offer of proof with regards to the issue of duress, as a matter of law, I find that, based on the offer of proof, the incidents described therein did not constitute duress.

22. The defendant, pursuant to the Agreements, is obligated to make contributions for the amount of the audit, 20 percent in liquidated damages, the cost of the audit, and all reasonable court costs and expenses and legal fees incurred herewith.

23. Based upon the audits described above, I find that the amount of monies due and owing would be as follows: a) Laborers' Funds for the period January 1, 1974, through March 31, 1980, $59,033.69, which consists of $48,673.91 in contributions (Exhibit 18), $625.00 for the cost of the audit (Exhibit 22), and 20 percent in liquidated damages of $9,734.78; b) Laborers' Funds for the period April 1, 1980, through March 31, 1983, the total sum of $8,335.84, which includes $6,613.20 in contributions, $400.00 for the cost of the audit, and $1,322.64 in 20 percent liquidated damages; c) Cement Masons' 803 Funds for the period January 1, 1974, through March 31, 1980, the total sum of $1,073.25, which consists of $811.04 in contributions, $100.00 for the cost of the audit, and $162.21 in 20 percent liquidated damages; d) Cement Masons' 502 Funds for the period April 1, 1980, through March 31, 1983, the total sum of $312.73, which consists of $93.94 in contributions, $200.00 for the cost of the audit, and $18.79 in 20 percent liquidated damages.

## II. CONCLUSIONS OF LAW.

1. Jurisdiction of this cause is based upon Section 301 of the National Labor Relations Act as amended 29 U.S.C. § 185(a) and Section 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1132 and § 1145 (ERISA), as amended.

2. Defendants are liable for all sums to the Cement Masons' 502 Funds, Laborers' Funds, and Cement Masons' 803 Funds for contributions for all hours worked by employees who have performed in whole or in part laborers' or cement masons' work. *Burke v. Lenihan,* 606 F.2d 840 (9th Cir., 1979); *Waggoner v. C & D Pipeline,* 601 F.2d 456 (9th Cir., 1979), *Waggoner v. Wm. RadKovich Co., Inc.,* 620 F.2d 206 (9th Cir., 1980).

3. Suits to recover damages incurred by Trust Funds created pursuant to collective bargaining agreements are properly brought pursuant to provisions of 29 U.S.C. Section 185. See *Lewis v. Benedict Coal Corporation,* [39 LC 66,240] 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); *Eastern District Council v. Blake Construction Co.,* 457 F.Supp. 825 (E.D.Virginia, 1978); *Waggoner v. McGray,* [86 LC 11,521] 607 F.2d 1229 (9th Cir., 1979); *Jim McNeff, Inc. v. Todd,* — U.S. —, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1983), as well as ERISA which calls for such suits, 29 U.S.C. 1145.

4. Defendant, on July 1, 1971, and March 2, 1975, with regards to the Laborers' Union, and June 28, 1972, and March 2, 1975, with regards to the Cement Masons' Unions, signed Memorandums of Agreement incorporating by reference the respective Collective Bargaining Agreements and Trust Agreements, and defendant is, therefore, bound by these Collective Bargaining Agreements signed with the Unions. *Const. Teamsters v. Con. Form Const. Corp.,* 657 F.2d 1101 (9th Cir., 1981); *Martin, et al. v. Benesh & Bruns, Inc.,* 532 F.Supp. 408 (N.D.Ill., 1982); *Mo-Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772 (10th Cir., 1983); *Landy Packing Co. v. Meat Cutters,* 627 F.2d 881,

105 LRRM 2427 (8th Cir., 1980); *Burns v. Ford Motor Company,* 331 N.E.2d 325 (Ill. App.Ct., 1st Dist., 1975). The short form Memoranda of Agreement are valid and enforceable and the Collective Bargaining Agreements are incorporated therein as if signed by the defendant. *Ibid.*

5. The defendant maintained that the Collective Bargaining Agreements they signed were unenforceable pursuant to the holding in *Caporale v. MarLes,* 656 F.2d 242 (7th Cir., 1981). I find that this case is distinguishable from the facts herein. The decision in *MarLes* is based upon contract principles of offer and acceptance and was limited to the peculiar circumstance in that case. In *MarLes,* the Company was mailed an unsigned Memorandum to secure benefits for a single employee, was never contacted by the Union, and was never notified whether the Union had accepted the Agreement. Here, defendant testified that all the documents were signed either in the presence of the Union or an agent of the Union; that they were co-signed by both parties; and that the defendant knew that he was signing a Union agreement. The 1975 Collective Bargaining Agreements were signed at a time when defendant had access to, had used, and had contemporaneously consulted with legal counsel and had been informed that he should sign the Memorandum of Agreement. The 1975 Collective Bargaining Agreements were signed after defendants knew of their obligations to pay contributions to the Funds, and the documents specifically notified defendant of this obligation.

■ 6. Defendants sought by way of offer of proof to introduce information regarding duress. While I found the facts did not constitute duress, I reaffirmed my decision to grant plaintiffs' Motion in Limine precluding the introduction of evidence as to duress since duress may not be used as a defense to an action brought by the Trust Funds. *Chicago District Council v. Dombrowski,* 545 F.Supp. 325, (Shadur, N.D.Ill., 1982); *Hammond v. Freiburger Excavating Co.,* 3 EBC 2196 (S.D.Iowa, 1982). Moreover, to institute or threaten to institute legal action where the party has a legal right to take such action does not constitute duress. *Kaplan v. Kaplan,* 25 Ill.2d 181, 182 N.E.2d 706 (1962); *Butler v. Metz, Train, Olson & Youngren, Inc.,* 62 Ill.App.3d 424, 20 Ill.Dec. 187, 379 N.E.2d 1255 (2d Dist.1978); *Alexander v. Standard Oil Company,* 97 Ill.App.3d 809, 53 Ill.Dec. 194, 423 N.E.2d 578 (5th Dist. 1981).

■ 7. Defendant has failed to communicate to the plaintiffs anything in writing as to disaffirming, voiding, or cancelling the Collective Bargaining Agreement. Section 8(d) of the National Labor Relations Act, 29 U.S.C., § 158(d) (1965), provides that notice of termination or modification of a Collective Bargaining Agreement shall be in writing. *Const. Teamsters v. Con. Form Const. Corp., supra; Mo-Kan Teamsters Pension Fund v. Creason, supra.* This provision provides to the termination of 8(f) agreements. Defendant's failure to notify the Unions or the Trust Funds in writing negates defendant's argument that the Collective Bargaining Agreements terminated. *Const. Teamsters v. Con. Form Const. Corp., supra; Ted Hicks and Associates, Inc. v. NLRB,* 572 F.2d 1024 (5th Cir., 1976); *McNeff v. Todd, supra.* Further, notice to an auditor while refusing an audit as to questions concerning the Agreement, as well as the filing of the Answer in this case are insufficient to terminate the Agreement. *Schlecht v. Bliss,* 271 Or. 304, 532 P.2d 1 (1975); *Teamsters' Local Union 745, etc. v. Braswell Mot. Frt. L., Inc.,* 428 F.2d 1371 (5th Cir., 1970).

■ 8. Plaintiffs are entitled to recover the sums claimed in the audit reports (plaintiffs' Exhibits 18, 19, 23, and 24), as well as 20 percent of that amount in liquidated damages, interest from the dates due, audit costs, and reasonable attorneys' fees and costs of litigation. ERISA 29 U.S.C. § 1132(g)(2). See *Lewis v. Benedict Coal Corp.,* [39 LC Paragraph 66,240] 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); *Eastern District Council v. Blake Construction Co.,* 457 F.Supp. 825 (E.D.Virginia, 1978); *Waggoner v. McGray,* [86 LC Paragraph 11,521], 607 F.2d 1229 (9th Cir.,

1979); *Bricklayers v. Thorleif Larsen & Son,* 89 LRRM 3113 (7th Cir., 1975); *Laborers' Pension Fund v. C.A. Sementa Contractors, Inc.,* 82 C 4028, Northern District of Illinois, Eastern Division, Judge Posner, as well as ERISA which calls for such suits for delinquent contributions 29 U.S.C. § 1145.

9. Plaintiffs are entitled to prejudgment interest at the legal rate of 5 percent per annum simple interest from the time defendant first had clear notice of the sums owed to the Funds until the date of judgment herein. *Nedd v. UMW,* 106 LRRM 2399, 506 F.Supp. 891 (D.Ct.Pa., 1980); *Bricklayers v. Taiariol,* 3 EBC 1363, 671 F.2d 988 (E.D.Mich., 1982), Ill.Rev.Stat. Ch. 74, Sec. 2; *Jenson v. Chicago & Western Indiana R.R.,* 94 Ill.App.3d 915, 50 Ill.Dec. 470, 419 N.E.2d 578 (1981); *Laborers v. Sementa, supra.*

10. Plaintiffs are entitled to post-judgment interest at the legal rate of 9 percent until the judgment is satisfied. 28 U.S.C. § 1961.

11. All the Findings of Fact are incorporated as Conclusions of Law herein.