**MOBIL OIL CORPORATION, Plaintiff,**

v.

**Devan M. SHAH, Defendant.**

**No. 86 C 3010.**

United States District Court,
N.D. Illinois, E.D.

March 11, 1987.

Jeffery M. Cross, Deborah S. Pardini, Ross & Hardies, Chicago, Ill., (Edward Beck, Fairfax, Va., of counsel), for Mobil Oil Corporation.

Mahendra R. Mehta, Gerald A. Goldman, Arthur R. Ehrlich, Goldman & Marcus, Chicago, Ill., for Devan Shah.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

This franchise dispute, brought under the Petroleum Marketing Practices Act [PMPA], 15 U.S.C. § 2801 *et seq.* (1982), is before us on plaintiff Mobil Oil Corporation's motions for summary judgment in its favor on its amended complaint and against defendant Devan M. Shah on his countercomplaint.

Mobil contends that Shah, who leases a Mobil service station in Des Plaines, Illinois, violated the franchise agreement by removing from the station signs bearing Mobil's trademarks and brand names and by failing to buy minimum amounts of gasoline from Mobil. Mobil seeks both a declaration that these acts allow it to terminate Shah's franchise purchase to the PMPA and damages for breaches of the Service Station Lease and the Retail Dealer Contract, the two documents comprising the franchise agreement.

Shah admits having committed the acts Mobil alleges. But he argues in his countercomplaint that Mobil drove him to them by, among other things, threatening and/or fraudulently inducing him to enter a franchise agreement that violates federal antitrust laws. He asks for damages and a preliminary injunction against termination.

■] Mobil filed numerous affidavits and documents, which support the arguments in its motions. To oppose these successful-

ly, Shah "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Yet Shah offers scant controverting evidence. For instance, in a notarized "verification," he states that the allegations in his countercomplaint are "substantially true." Complaint at Law [Countercomplaint], attached Verification. This suggests that some allegations, though it does not specify which, are not entirely true. The verification also does not, as required by Rule 56(e), state that it is made on Shah's personal knowledge, nor set out facts admissible as evidence, nor show that Shah is competent to testify regarding the matters alleged. Therefore, we cannot consider it as evidence in deciding these motions.

That leaves us with Shah's affidavit [Shah aff.] accompanying Defendant's Response to Plaintiff's Motion to Dismiss and for Summary Judgment on the Defendant's Counterclaim. Attached to it are a tax return for February–March 1986, which is neither signed nor otherwise certified, and an Illinois sales tax statement for February 1986.

These documents do not address many of the claims in Shah's countercomplaint, including his allegation that Mobil interfered with his right to buy the station when its previous owner, the Atlantic Richfield Co., decided to withdraw from all markets east of the Mississippi River. Because of this interference, Mobil acquired the station illegally, Shah contends. Countercomplaint, Counts I & II.

■] But the PMPA does not grant franchisees like Shah the absolute right to buy when the franchisor withdraws; the franchisor also may transfer the property to a third party, which then must offer the franchisee a nondiscriminatory franchise agreement. *Atlantic Richfield Co. v. Brown,* No. 85 C 5131, slip op. (N.D.Ill. Oct. 21, 1985) [Available on WESTLAW, 1985 WL 3316] (interpreting PMPA, 15 U.S.C. § 2802(b)(2)(E)). In an apparent at-

tempt to show that the franchise relationship between Mobil and him differed from those between Mobil and similarly situated franchisees, Shah alleges that Mobil did not give him promotional support and also charged excessively high prices for its gasoline. As we discuss next, Shah fails to support either of these claims. Mobil, on the other hand, offers considerable evidence that Shah's franchise agreement was the same as that of other Mobil dealers. Supplemental Materials to Mobil's memorandum supporting its summary judgment motion [Supp. Mat. 1], Exs. D, ¶¶ 5–10, H; Additional Supplemental Materials filed with Mobil's reply memorandum Mobil's Reply to its summary judgment motion [Supp. Mat. 2], Ex. A; Supplemental Materials to Mobil's combined motion against the countercomplaint [Supp. Mat. 3], Exs. A, E, F; Evan Brundahl affidavit dated Feb. 9, 1987 [Brundahl aff.]. Accordingly, Counts I and II of Shah's countercomplaint fail as a matter of law.

Shah claims that Mobil thwarted his gasoline sales by not providing promised promotional glassware—a promise Shah states helped persuade him to sign the franchise agreement. Countercomplaint, Count V; Shah aff., ¶ 8. As we soon shall discuss, such a promise would not constitute part of the franchise agreement. In any event, because of the extreme vagueness of Shah's averment, which is countered by a Mobil representative's affidavit, Supp. Mat. 3, Ex. E, we grant Mobil summary judgment on this count.

Shah further contends that Mobil charged him excessively high prices for gasoline. Countercomplaint, Counts VI & VII. Indeed, he contends, these prices were higher than those charged a station located nearby on Mannheim Road. *Id.; see also* Shah aff., ¶¶ 9, 10, 12. This situation engendered unfair competition and caused a loss of goodwill and revenue, Shah argues. Yet Shah does not offer any evidence regarding the prices he or other lessors were charged. Mobil, meanwhile, amply shows that the prices were in line with those charged by other companies. Supp. Mat. 2, Ex. A; Supp. Mat. 3, Ex. F, Brundahl aff., ¶ 3. The Mannheim Road

station, moreover, was not in Mobil's control and thus not similarly situated to Shah. Sup. Mat. 2, Ex. A; Brundahl aff., ¶ 6. This claim too fails.

■ In Counts VIII and IX, Shah alleges that by requiring him to buy Mobil gasoline in order to maintain his franchise, Mobil engaged in tying in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (1982) and the Clayton Act, 15 U.S.C. § 14 (1982). Yet it is uncontroverted that: Shah was required to buy from Mobil each month only 27.5 percent of the gasoline he had purchased from Atlantic Richfield when that company was his franchisor, Supp. Mat. 1, Ex. H; Mobil's franchise agreement allowed Shah to sell other suppliers' gasoline as long as it was sold out of separate, properly marked pumps, Mobil's Reply at 12–13, *see* Service Station Lease, ¶ 9(b); and Mobil owns less than 3 percent of all the service station properties in Illinois, Supp. Mat. 3, Ex. 1. Thus Shah fails to prove the elements of illegal tying as delineated either in *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984), or, for that matter, in *Nelligan v. Ford Motor Co.*, 161 F.Supp. 738 (W.D.S.C.1958), *aff'd*, 262 F.2d 556 (4th Cir.1959), the sole case on which Shah relies. *See* Defendant's Memorandum of Law in Support of his Response to Mobil's Motion for Summary Judgment at 6.

Shah's affidavit centers on two contentions, which also are outlined in Counts III and IV of the countercomplaint. First, Shah states that Mobil's representatives orally promised to monitor market conditions and to reduce the minimum monthly gas-purchase requirement if necessary. They also threatened to evict him if he did not sign their contract and lease, Shah alleges.

■ Under Illinois law, the language in a written contract, if unambiguous, provides the sole source for a judge's determination of the contract's meaning and the parties' intentions; parol evidence on these matters is not admissible. *20 East Cedar Condominium Association v. Luster*, 39 Ill. App.3d 532, 535, 349 N.E.2d 586, 589 (1976); *see also City of Clinton v. Moffitt*,

812 F.2d 341, 342–43 (7th Cir.1987) (applying Illinois law). In this case, both the Retail Dealer Contract and the Service Station Lease clearly state that they may not be modified orally. Thus, even if Shah could have presumed that Mobil's representatives had the authority to modify the lease and contract, the integration clauses in those documents bar any such modification. *See Amoco Oil Co. v. Beyer,* Bus. Franchise Guide (CCH) ¶ 8062, at 13,975 (N.D.Ill.1983). Therefore, Shah was obliged to purchase the minimum amount of gasoline from Mobil each month, as set out in the Retail Dealer Contract, ¶ 1.

Shah would evade this conclusion by contending that Mobil's representatives fraudulently induced or alternatively coerced him into signing the lease and contract. Fraud would have resulted had Mobil's representatives made a statement of fact, knowing it to be false, to Shah, who, unaware of its falsity, detrimentally relied on the statement. *See Classic Bowl, Inc. v. AMF Pin Spotters, Inc.,* 403 F.2d 463, 466 (7th Cir.1968) (quoting *Wilkinson v. Appleton,* 28 Ill.2d 184, 187, 190 N.E.2d 727, 729–30 (1963)). Shah avers that Mobil's representatives persuaded him to sign the contract and lease by promising to monitor market conditions and to reduce the minimum gas-purchase requirement if appropriate. Shah aff., ¶¶ 3, 4. Mobil's representatives deny making these promises. Supp. Mat. 3, Exs. G, H. Further, one representative contends Mobil did monitor conditions, and once cuts Shah's minimum requirement. *Id.,* Ex. A. For purposes of this summary judgment motion, however, we must resolve this conflict in Shah's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Even so, we must grant Mobil summary judgment on this count as well. Regarding two elements of fraud—that the representatives knew the promises to be false and that Shah detrimentally relied on those promises—Shah offers no proof whatsoever, let alone the clear and convincing proof necessary to show fraud. *Classic Bowl,* 403 F.2d at 466.

■ Similarly, Shah offers no proof that Mobil forced him to sign the franchise agreement out of economic duress; that is, inducement by a wrongful act, which left Shah without free will to reject the agreement. *See Alexander v. Standard Oil Co.,* 97 Ill.App.3d 809, 814, 53 Ill.Dec. 194, 198, 423 N.E.2d 578, 582 (1981). Even though the issue is disputed, *compare* Shah aff. ¶¶ 2, 4 *with* Supp. Mat. 3, Exs. G, H, we assume that Mobil's representatives did threaten to evict Shah if he did not sign the contract and lease. We already have determined, however, that Mobil offered Shah a nondiscriminatory franchise agreement. By the terms of the PMPA, if Shah rejected that agreement, he had no right to continue operation of the station. *See Atlantic Richfield Co. v. Brown,* No. 85 C 5131, slip op. (N.D.Ill. Oct. 21, 1985); PMPA, 15 U.S.C. § 2802(b)(2)(E). Since Mobil legally was entitled to evict Shah in these circumstances, any threat to evict that its representatives may have made is not actionable. *See Alexander,* 97 Ill. App.3d at 815, 53 Ill.Dec. at 200, 423 N.E.2d at 582. Counts III and IV thus also fail.

Having granted Mobil summary judgment regarding the substantive counts in Shah's countercomplaint, we conclude that Shah has proved no ground for retaining possessory interest in the station. Thus, we deny his request for a preliminary injunction. *See* Countercomplaint, Count XI.

■ We turn to Mobil's motion for summary on its own amended complaint. As noted above, Shah admits that he removed signs bearing Mobil's trademarks and brand names. He also admits having failed to buy the minimum monthly requirement of gasoline from Mobil—an amount less than a third of what he had purchased from Atlantic Richfield. These acts clearly breached paragraphs 1, 6, 9(c), and 16 of the Retail Dealer Contract and paragraph 9(b) of the Service Station Lease, provisions Mobil has shown to be reasonable and material within the meaning of Section 2802(b)(2)(A) of the PMPA. *See Brach v. Amoco Oil Co.,* 677 F.2d 1213 (7th Cir. 1982); *cf. Beyer,* Bus. Franchise Guide

¶ 8062, at 13,974 (twenty-four-hour operation requirement reasonable and material); *Steigerwald v. Mobil Oil Corp.*, No. C83–2303, mem. op. at 7 (N.D.Ohio July 28, 1983) (minimum gallonage requirement reasonable and material). Nor has Shah demonstrated that his noncompliance with these provisions was beyond his reasonable control. *See* PMPA, 15 U.S.C. § 2801(13). Shah's removal of Mobil's signs further qualifies as an event justifying termination. *Id.*, § 2802(b)(2)(C). Finally, Mobil properly notified Shah of its intent to terminate, as required by Section 2804 of the PMPA. By the terms of PMPA, therefore, Mobil is entitled to terminate Shah's lease.

Accordingly, we grant Mobil summary judgment on all aspects of its amended complaint—Counts I, II, and III alleging breaches of the lease and contract, and Counts IV and V seeking a declaratory judgment permitting termination.

### ORDER

Plaintiff's motions for summary judgment pursuant to Fed.R.Civ.P. 56 on its amended complaint and against defendant's countercomplaint are granted. Plaintiff to submit draft order granting appropriate relief on Monday, March 23, 1987 at 9:30 a.m. Pretrial and trial schedules are stricken.