2025 IL App (2d) 240410-U
No. 2-24-0410
Order filed March 28, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CYNTHIA J. HOLM, as Co-Trustee of the Gus G. Kitsos Revocable Living Trust of 1999, | ) ) ) | Appeal from the Circuit Court of Kane County. |
|     Plaintiff and Counterdefendant-Appellee, | ) ) ) ) | |
| v. | ) ) | No. 20-CH-341 |
| GUS KITSOS, JR., as Co-Trustee of the Gus G. Kitsos Revocable Living Trust of 1999, | ) ) ) | |
|     Defendant and Counterplaintiff-Appellant. | ) ) ) | Honorable Kevin T. Busch, Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court erred in construing purported settlement agreement as requiring dismissal of counterclaims, where the agreement only passingly referenced the underlying litigation and did not provide for the release of any pending claims. Moreover, even if the settlement agreement could be construed to provide for a release, the record does not show that the conditions for release were fulfilled.

¶ 2     Defendant and counterplaintiff, Gus G. Kitsos, Jr. (Gus Jr.), appeals from an order of the circuit court of Kane County dismissing, pursuant to an ostensible settlement agreement, all pending claims in this action. Gus Jr. contends that the trial court erred in dismissing his

counterclaim and "third-party complaint" against plaintiff and counterdefendant, Cynthia J. Holm (Cynthia). We reverse and remand for further proceedings consistent with this opinion.

¶ 3                                         I. BACKGROUND

¶ 4      On October 14, 2020, Cynthia, as co-trustee of the Gus G. Kitsos Revocable Living Trust of 1999 (Trust), filed a complaint in the circuit court of Kane County against Gus Jr., alleging that he breached his fiduciary duty as co-trustee. According to the complaint, the parties' father, Gus G. Kitsos Sr. (Gus Sr.), was the Trust's settlor and, until his death in February 2019, was its sole trustee. Cynthia, Gus Jr., and their sister, Georgina Kitsos, became successor trustees and beneficiaries. Cynthia also became the executor of Gus Sr.'s estate. Georgina died in 2019, leaving Cynthia and Gus Jr. as the remaining trustees. Georgina's son, Zaeem HC Kitsos, became a beneficiary of the Trust. The complaint alleged that in October 2020,

> "counsel assisting with the loan work-out and attempted re-finance of the real estate properties which [were] eventually [to] be transferred to the Trust, communicated to Gus Jr. that in order to transfer said properties to the Trust (and in order to satisfy the requests for the bank considering re-financing) he must sign and deliver a *Ratification of Trust Agreement*." (Emphasis in original.)

According to the complaint, Gus Jr. acted contrary to the best interests of the Trust by (1) refusing to sign the "Ratification of Trust Agreement" (Ratification), (2) otherwise refusing to participate in attempts to obtain financing "for the Trust, or for real property required to be transferred to the Trust," and (3) making unreasonable demands of Cynthia and others involved in the affairs of the Trust. The complaint sought compensatory and punitive damages, as well as the removal of Gus Jr. as co-trustee. An exhibit attached to the complaint indicated that the real property in question was commercial real estate, specifically shopping centers.

¶ 5     In his answer to the complaint, Gus Jr. admitted that he received the communication regarding the need to sign and deliver the Ratification. However, he alleged that he had requested to see certain loan documents to determine their terms and conditions and assess the risk to the Trust of executing such documents. He claimed he received "[n]o adequate response" to his request. As an affirmative defense to Cynthia's claim for breach of fiduciary duty, which sounded in equity, Gus Jr. essentially raised the clean hands doctrine, accusing Cynthia herself of inequitable conduct, including withholding various documents from him and making preferential distributions of Trust property. Cynthia denied the material allegations of Gus Jr.'s affirmative defense.

¶ 6     Beginning on January 29, 2021, Cynthia filed a series of motions to disqualify Gus Jr. as co-trustee. The trial court entered several orders requiring Gus Jr. to cooperate with Cynthia in various matters related to the Trust and the administration of Gus Sr.'s probate estate. (Ultimately, on January 19, 2023, the trial court removed Gus Jr. as co-trustee.)

¶ 7     On July 22, 2021, Cynthia, Gus Jr., and Zaeem executed a document entitled "Global Gus Kitsos Trust Resolution and Family Settlement Agreement" (Settlement Agreement), which recited that Gus Kitsos Sr. had executed a pour-over will, leaving his entire estate to the Trust, and that the will was being probated in the circuit court of Cook County. The recitals further stated in pertinent part:

> "WHEREAS, there is litigation pending in the Circuit Court for the 16th Judicial Circuit, Kane County, Illinois, involving [Cynthia] and Gus, Jr., arising out of their respective roles as Successor Trustees of the Trust ('Trust Litigation');[1] and

---

[1]Despite setting up "Trust Litigation" as a shorthand reference, the Settlement Agreement did not

WHEREAS, the Probate Estate is comprised most significantly of 3 commercial properties and the legal entities that own, control and manage said commercial properties; and,

WHEREAS, said commercial properties are currently in foreclosure litigation [in] the Circuit Court of Cook County; and,

WHEREAS, the beneficiaries of the Estate and Trust desire to protect the assets of the Trust and [E]state and find a manner and method of moving forward with the re-financing of the loans which are the subject of the foreclosure actions and the creation of a mechanism to manage said Trust assets in the future;

NOW, the parties herein, *** in an effort to resolve any prior differences and create a mechanism to preserve, maintain, manage, and distribute the assets of the Trust agree as follows[.]"

¶ 8     The Settlement Agreement then provided, in pertinent part, that (1) the parties would apply to a lender to refinance the loans on the commercial properties in foreclosure and cooperate in the refinancing process; (2) Cynthia and Gus Jr., as co-trustees, would create operating agreements for the management of the Trust and the distribution of the Trust assets; (3) the parties would obtain "an evaluation of the assets of the Trust, including the determination of the fair market value of the commercial properties"; and (4) the parties would "authorize an audit of the assets of the Trust and commercial properties, along with the entities that manage said assets and equalize any prior distributions to any beneficiary among the other beneficiaries." The Settlement Agreement further provided:

---

thereafter mention the litigation, by shorthand or otherwise.

"Within 18 months after the refinancing of the commercial properties, [Cynthia] shall have the first right to buy out the interests of any other beneficiary of this agreement. Gus, Jr. shall have the second right, and Zaeem the final right. The value of said assets shall be determined by *** appraisals and the buyer shall pay to any selling beneficiary his/her appropriate interest. Said interest shall be determined by (a) the portion allocated to him/her of such interest as reflected in the Trust documents, and (b) taking the appraised value less any mortgage attached to the properties and all Trust assets. ***."

¶ 9 The Settlement Agreement further provided that, failing a buyout of the commercial properties, the properties would be listed for sale.

¶ 10 In addition, the Settlement Agreement provided that the Trust would (1) pay the remaining mortgage balance (estimated at $100,000) on Gus Jr.'s residence upon receipt of a payoff letter, (2) quitclaim the property to Gus Jr., and (3) pay Gus Jr. the difference between the $100,000 estimated mortgage balance and the actual payoff amount. According to the Settlement Agreement, "Said distribution shall be deemed an advance and shall be incorporated into and considered in the final distribution of Trust [A]ssets, as will any other advance the Trust has made to any beneficiary." Finally, the Settlement Agreement provided,

"The beneficiaries do hereby agree to retain the services of a forensic accountant to determine the proper and correct value of the assets and reconcile the past receipts, payments of the entities[,] and distributions to the beneficiaries so that it can be determined as to the net distributions to each beneficiary."

¶ 11 On July 23, 2021, the trial court ordered the parties to jointly direct "all accountants/CPAs who have access to the financial records reflecting the assets, income, and liabilities held by, or to become held by, the Trust to fully disclose and to issue a Report to the Trust beneficiaries within

seven (7) days from the date of this [o]rder." The report was to cover the period from January 2019 through March 2021. On August 4, 2021, the court entered an order noting that the parties had directed Weiss & Company, LLP (Weiss LLP) to produce all records required in the July 23, 2021, order.

¶ 12    On September 20, 2021, Gus Jr. filed a motion to enforce the Settlement Agreement. He claimed he had provided Cynthia with a payoff letter for his residence. He further asserted that, although Cynthia, as the executor of Gus Sr.'s estate, was the only one authorized to transfer the funds to pay off the mortgage, she had not done so. Gus Jr. also claimed that no forensic accounting had been undertaken, that Cynthia used Gus Sr.'s and Georgina's credit cards to pay expenses related to the Trust and its properties, and that she used Trust assets to pay personal expenses. Moreover, Gus Jr. claimed that, although the Trust provided for his son and Zaeem to receive separate college accounts in the amount of $160,000 each, "Zaeem's education [was] *** being funded by the [T]rust, [but] no account or fund ha[d] been established by the [T]rust to pay for [Gus Jr.'s] son's education." As relief, Gus Jr. asked the trial court to enter an order (1) requiring Cynthia to comply with the terms and conditions of the Settlement Agreement and (2) "replacing the current Co-Trustee with an independent Trustee with the objective of properly managing the [T]rust assets and disbursing said assets in compliance with the terms and conditions of said Trust[.]"

¶ 13    In her response to the motion, Cynthia asserted that she had attempted to pay off the mortgage on Gus Jr.'s residence, but the wire payment was rejected because a new payoff letter had been issued. Cynthia assured the court that she intended to attempt another wire payment in the proper amount. She further noted that Gus Jr. had requested financial information from Weiss LLP, the Trust's accounting firm, and that Weiss had complied. In response to Gus Jr.'s complaints

about Cynthia's (1) use of Gus Sr.'s and Georgina's credit cards to pay Trust expenses and (2) use of Trust assets to pay personal expenses, Cynthia stated, "These allegations will be fully addressed in [d]iscovery or before the conclusion of this case, by way of a formal [a]ccounting." Cynthia admitted that the Trust was paying Zaeem's educational expenses but that no provision for Gus Jr.'s son's education had been made. She added that "any further interest or aptitude of Gus Jr's [*sic*] son (for the purpose[s] of an educational fund) are unknown to her." Cynthia did not respond to Gus Jr.'s assertion that no forensic accounting had been undertaken.

¶ 14    On November 4, 2021, the trial court entered an order granting Gus Jr.'s motion in part. The court ordered both Cynthia and Gus Jr. removed as co-trustees but stayed the order until January 7, 2022. The court ordered the parties to "provide and submit to the other party the names of two (2) persons or entities to act as Independent Successor Trustee[.]" In subsequent orders, the trial court extended the stay of the removal of the parties as co-trustees (though ultimately, in January 2023, the court removed Gus Jr. as co-trustee).

¶ 15    On January 7, 2022, with leave of court, Gus Jr. filed a "Counter Complaint for Accounting and Conversion" against Cynthia, alleging, *inter alia*, that she (1) changed the locks on the commercial properties without his approval or agreement, (2) paid or reimbursed herself significant amounts from Trust assets without Gus Jr.'s consent or court approval, (3) unilaterally entered into agreements for professional services on behalf of the Trust, and (4) made unilateral financial decisions on behalf of the Trust, including disbursements to beneficiaries. Gus Jr. also alleged that Cynthia made payments with credit cards belonging to deceased individuals and "[paid] college fund expenses of one of the [Trust] beneficiaries, per the terms of the Trust, while failing to fund the college fund account for [Gus Jr.'s] son."

¶ 16    Cynthia's answer denied the allegation that she took improper unilateral action as a co-trustee. She purported to quote from a provision of the Trust agreement permitting co-trustees to take unilateral action. As to the allegation that she changed the locks on the commercial properties, she responded:

"Cynthia is the Manager of the three limited liability companies which hold title to the commercial properties, and such activity is permitted (if not absolutely necessary) to preserve their value. Those properties are no longer in the Trust."

¶ 17    As to the allegation of improper credit card usage, Cynthia responded: "No credit card in the name of any decedent *is being used* without authority." (Emphasis added.) As to the allegation of inequitable funding of college expenses, she answered: "No indication of interest on behalf of Gus, Jr.'s son in attending college has been received by Cynthia."

¶ 18    On March 15, 2022, with leave of court, Gus Jr. filed a "Third-Party Complaint," bringing a derivative action against Cynthia for her conduct in connection with three limited liability companies (LLCs) in which Gus Jr., Cynthia, and Zaeem each had a one-third interest.[2] The LLCs were successors in interest to limited partnerships that owned commercial properties held initially in the Trust. The LLCs were formed in connection with transactions to refinance the commercial properties. Gus Jr. alleged, in essence, that Cynthia mismanaged the LLCs and withheld

[2]We will refer to Gus Jr.'s "third-party complaint" as simply additional counterclaims. "Third-party complaint" was a misnomer. A third-party complaint is one in which a defendant "bring[s] in as a defendant a person not a party to the action who is or may be liable to him or her for all or part of the plaintiff's claim against him or her." 735 ILCS 5/2-406(b) (West 2020). Because Cynthia was already a party to the action, the claims against her would have more properly been designated "counterclaims." *Id.* § 2-608.

information from the other members. Cynthia denied the misconduct allegations and raised the business judgment rule as an affirmative defense.

¶ 19   On March 14, 2024, Cynthia filed a "Motion to Dismiss Pursuant to Settlement Agreement." She claimed that she had exercised her right under the Settlement Agreement to buy out Gus Jr.'s interest in the Trust property and that the transaction had been completed. She contended that Gus Jr. filed his counterclaims against her after the parties entered into the Settlement Agreement and that "[t]he Settlement Agreement has effectively been fully performed, thereby rendering the need for the pendency of this case unnecessary."

¶ 20   In his written response to the motion, Gus Jr. contended that the Settlement Agreement "was based upon the issues and pleadings *** before the Court" when the parties entered into the Settlement Agreement and that the Agreement did not contemplate settlement of the claims subsequently raised in Gus Jr.'s counterclaims. Gus Jr. further argued that the Settlement Agreement had been only partially performed because certain requirements remained unfulfilled, *e.g.*, the requirements of an audit and forensic accounting.

¶ 21   The trial court granted Cynthia's motion and dismissed the case with prejudice, reasoning as follows:

> "So my recollection is the parties sat down with the assistance of the Court and engaged in a settlement conference in an effort to resolve all disputes between the parties, and an agreement was reached.
>
> And almost immediately, Gus [Jr.] had cold feet and Gus [Jr.] began to behave in a way, as he has throughout the litigation, in an effort to frustrate the resolution. It is Gus [Jr.] who has been uncooperative.

On repeated occasions, motions had to be brought threatening to remove him as a co-trustee because he did not want to resolve these cases.

But he did engage in a settlement. And I believe that the allegations were filed subsequent to that agreement, not as new claims but in an effort to forestall the execution of the settlement.

I don't believe they are new claims. *I believe they are all part of the settlement agreement.*

*I believe any forensic accounting at this time is rendered moot and is not material and necessary to enforce that agreement.*

*It would occur to this Court that this matter is settled, and performance has been made, and [Gus Jr.] is whole now as it relates to the obligations of the [T]rust and his sister in relation to that settlement.*" (Emphases added.)

Gus Jr. unsuccessfully moved for reconsideration and this appeal followed.

¶ 22                                II. ANALYSIS

¶ 23    The thrust of Gus Jr.'s argument is that, contrary to the trial court's finding, Cynthia's purchase of his interest in the Trust assets could not have made him "whole" where Cynthia had previously converted or otherwise improperly disbursed Trust assets. In this respect, Gus Jr. stresses that the unperformed requirements of the Settlement Agreement—an audit and forensic accounting—were essential to making him whole.

¶ 24    Because the dismissal of Gus Jr.'s claims was based entirely on the Settlement Agreement, the resolution of this appeal hinges on the construction of that document. "[A] settlement agreement is a contract, and construction and enforcement of settlement agreements are governed by principles of contract law. [Citation.] The intent of the parties must be determined from the

plain and ordinary meaning of the language of the contract, unless the contract is ambiguous." (Internal quotation marks omitted.) *Law Offices of Colleen M. McLaughlin v. First Star Financial Corp.*, 2011 IL App (1st) 101849, ¶ 18. The construction of a contract is a question of law, which we review *de novo*. *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 305 (2002).

¶ 25    The Settlement Agreement outlines the rights and responsibilities of the co-trustees and beneficiaries concerning the Trust assets and one another. It specifies that the parties would apply to a lender to refinance mortgages on commercial properties that were in default, cooperate in the refinancing process, and provide or execute documents necessary to refinance the property. The Settlement Agreement sets forth the terms upon which (1) the beneficiaries could buy out the interests of the other beneficiaries in the commercial properties or, failing such buyout, (2) the properties would be listed for sale. The parties to the Settlement Agreement agreed (1) to authorize an audit of the Trust assets to "equalize any prior distributions to any beneficiary among the other beneficiaries" and (2) "to retain the services of a forensic accountant to determine the proper and correct value of the assets and reconcile the past receipts, payments of the entities[,] and distributions to the beneficiaries so that it can be determined as to the net distributions to each beneficiary."

¶ 26    Notably absent from the Settlement Agreement is any significant mention of the ongoing litigation, much less the Agreement's impact on that litigation. The Settlement Agreement does include the following recital: "WHEREAS, there is litigation pending in the Circuit Court for the 16th Judicial Circuit, Kane County, Illinois, involving [Cynthia] and Gus, Jr., arising out of their respective roles as Successor Trustees of the Trust[.]" However, the litigation is not mentioned again. The Settlement Agreement makes no provision whatsoever for releasing any claims pending

before the trial court. Thus, we fail to see how the Settlement Agreement could be grounds for dismissing Gus Jr.'s claims.

¶ 27    Even assuming, for the sake of argument, that the Settlement Agreement could somehow be viewed as providing for the release of pending claims, the question remains whether the Settlement Agreement's requirements for release were satisfied. Citing *Patrick Engineering, Inc. v. City of Naperville*, 2011 IL App (2d) 100695, ¶ 24, *rev'd on other grounds*, 2012 IL 113148, *Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999), *James v. Lifeline Mobile Medics*, 341 Ill. App. 3d 451, 455 (2003), and *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599 (1987), Gus Jr. argues that a party seeking to enforce a contract, such as the Settlement Agreement, must plead and prove performance of his or her obligations under the contract. Also, citing *In re Marriage of Corkey*, 269 Ill. App. 3d 392, 398 (1995), and *Maywood Proviso State Bank v. York State Bank & Trust Co.*, 252 Ill. App. 3d 164, 168 (1993), he argues that a contract cannot be enforced unless its conditions precedent have occurred. Gus Jr. argues, in essence, that the terms of the Settlement Agreement requiring an audit and forensic accounting to equalize distributions to beneficiaries were either Cynthia's obligations or conditions precedent (or both).

¶ 28    Cynthia responds that the cases Gus Jr. cites are factually distinguishable, but she does not appear to dispute the general principles they stand for. Instead, she simply relies on the trial court's finding that "[i]t would occur to the Court that this matter is settled, and performance has been made, and [Gus Jr.] is whole now as it relates to the obligations of the [T]rust and his sister in relation to that settlement." There appears to be no dispute, however, that the audit and forensic accounting required under the Settlement Agreement never occurred. Evidently, the trial court believed that "performance ha[d] been made" because "any forensic accounting *** [was]

rendered moot and [was] not material and necessary to enforce [the Settlement Agreement]." However, the trial court was simply incorrect. Although Gus Jr. received his share of the Trust assets when Cynthia bought out his interest, that disbursement could not have rectified any prior losses to the Trust from the misconduct alleged in his counterclaim, *e.g.*, that Cynthia converted and/or mismanaged the Trust assets. Nor would the disbursement compensate Gus Jr. for any losses due to Cynthia's alleged mismanagement of the business entities holding title to the commercial properties originally held in the Trust.

¶ 29    Cynthia also argues that her multiple motions to disqualify Gus Jr. as co-trustee were "*critical* to the Court's reasoning" (emphasis in original) underlying its ruling on her motion to dismiss. We disagree. Although the trial court mentioned these motions, its reasons for dismissing the case pursuant to the Settlement Agreement were that Gus Jr. had been made whole and that certain unperformed obligations under the Agreement were moot. The motions to disqualify Gus Jr. have no discernible bearing on these matters, and Cynthia has made no effort to explain their relevance.

¶ 30    Accordingly, the trial court erred in dismissing the action pursuant to the Settlement Agreement.

¶ 31                                        III. CONCLUSION

¶ 32    For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for further proceedings consistent with this opinion.

¶ 33    Reversed and remanded.